[No. G009829. Fourth Dist., Div. Three. Sept. 25, 1991.]

ORANGE COUNTY EMPLOYEES ASSOCIATION, INC., et al.,
Plaintiffs and Respondents, v.
COUNTY OF ORANGE et al., Defendants and Appellants.

## COUNSEL

Rourke & Woodruff, Lois E. Jeffrey and Robert W. Lucas for Defendants and Appellants.

James L. McBride, County Counsel (Ventura), Dennis L. Slivinski, Assistant County Counsel, Ronald D. Wenkart, Claire Y. Morey, Geraldine Jaffe, Rexon, Freedman, Klepetar & Hambleton and Jeffrey C. Freedman as Amici Curiae on behalf of Defendants and Appellants.

Rockwell & Meyer, Richard S. Rockwell, Paula E. Meyer and Kathleen Sage for Plaintiffs and Respondents.

Margie Valdez and Madalyn J. Frazzini as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**SONENSHINE, J.**—Is the County of Orange required, pursuant to section 53205.2 of the Government Code,[1] to provide retired county personnel with

---

[1]Section 53205.2 provides: "In granting the approval specified in Sections 53202 and 53202.1 the local agency or governing board shall give preference to such health benefit plans as do not terminate upon retirement of the employees affected, and which provide the same benefits for retired personnel as for active personnel at no increase in costs to the retired person, provided that the local agency or governing board makes a contribution of at least five dollars ($5) per month toward the cost of providing a health benefits plan for the employee or the employee and the dependent members of his [or her] family. In the case of retired personnel who receive retirement benefits under the State Employees' Retirement System, the health benefits coverage provided for annuitants by a health benefits plan under the Meyers-Geddes State Employees' Medical and Hospital Care Act shall satisfy the requirements of this section."

Section 53202 provides: "In providing health and welfare benefits the local agency may approve plans of their officers and employees or may contract with one or more admitted insurers, health service organizations, or legal service organizations for such plan or plans of

health care benefits equal to those provided to active employees, at no additional out-of-pocket cost to the retirees? Stated another way, does section 53205.2 mandate equal subsidies for retired employees? The trial court concluded it does and that mandamus was appropriate. We disagree and reverse the judgment.

## I.

In October 1985, a mandamus petition was filed against the County of Orange and its board of supervisors (county), on behalf of Orange County Employees Association, Inc. (OCEA), an organization representing the interests of county's active and retired personnel. Also named as a petitioner was Fred Preble, an employee scheduled to retire shortly after trial. A first amended petition filed in March 1987 added Frank Higginbottom, a county employee who had already retired. A second amended petition was filed in April.

The petition sought a peremptory writ of mandate commanding county to perform its "clear, unequivocal, present, and ministerial duty . . . to give preference to such employee health benefits affected, and which provide the same benefits for retired personnel as for active personnel at no increase in costs to the retired person," pursuant to section 53205.2.[2] It alleged that county had "failed to fulfill [its] ministerial duty and [has] abused [its] discretion by failing to give preference to a health benefit plan which provides the same benefits for retired personnel as for active personnel at no increase in costs to the retired personnel."

Trial commenced January 22, 1990, and lasted five days.[3] At that time, county had approved seven alternative health benefit options as

health and welfare benefits as the local agency shall determine to be in the best interests of the local agency and the officers and employees electing to accept the benefits. . . ."

All statutory references are to the Government Code unless otherwise specified.

[2]The petition contained a second cause of action which was unrelated to section 53205.2. It was ultimately dismissed.

[3]Over county's objection, the court heard testimony of Assemblyman John Knox, who had authored the bill leading to the statute's enactment in 1963. In reaching its decision, the trial court relied on this testimony. On appeal county renews its objection, claiming Knox's personal belief regarding the statute is inadmissible on the issue of legislative intent. Indeed, Knox admitted he had little, if any, recollection of the discussions regarding the bill: "I just . . . don't have a real clear recollection of exactly what happened that day."

The court may have erred. "A legislator's statement is entitled to consideration . . . when it is a reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely an expression of personal opinion. [Citations.]" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700 [170 Cal.Rptr. 817, 621 P.2d 856].) However, the *opinions* of the author will not be considered as

part of a comprehensive plan available to active employees and retirees. Each option provided retirees and employees with exactly the same benefits, at the same premium cost. County paid 100 percent of the premium for single active employees and 75 percent for employees with dependent coverage but no part of the retirees' premiums. However, because retirees, who are not rated separately from active employees, present a substantially higher medical risk than active employees, their premiums are lower than if they were rated separately. Thus, their rate is, in essence, subsidized by county.

On March 7, the court issued a 14-page memorandum of tentative decision, which it deemed a statement of decision. It interpreted section 53205.2 as follows: "Board's duty that is in issue is to approve health benefits plans that have the same coverage for retirees that is available to active county employees and at no increase in cost to retirees over the cost to active employees. There are two relevant conditions precedent for the duty to arise. The first is that Board decide or elect to provide health and welfare benefits for its active employees and retirees and their dependents. The second is that [county] pay at least five dollars per month per employee toward the cost of the plan. The first condition is invoked by Government Code sections 53201, 53202, 53202.1, 53205, 53205.1; the second, by section 53205.2 itself. If Board so elects and [county] so pays, then the duty in question arises: Board must approve a plan or plans with the above described coverage and cost provisions. *This duty arises because of the phrase . . . 'shall give preference to such health benefit plans . . . at no increase in costs to the retired person. . . .'*" (Italics added.)

The court explained: "The phrase is not 'shall prefer'—a simple mental process. Instead, it is 'shall give preference.' The word 'give' must not be ignored lest the rule of statutory construction to not omit words in a statute be violated. (Code of Civil Procedure, section 1858.) When 'give' is properly considered, the process combines the mental choice of preferring with the physical act of giving effect to that preference. The result of giving preference to a cost equalizing plan over other plans is that the cost equalizing plan will be selected. If it were not selected, preference would not have been given to it." The court concluded "shall give preference to" therefore was mandatory language, "mak[ing] all of section 53205.2 mandatory, thus creating the above described duty. This appears to be the only reasonable interpretation that may be made, in view of the mandatory phrase."

evidence in favor of a particular meaning because there is no assurance that other legislators shared those opinions. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 742 [248 Cal.Rptr. 115, 755 P.2d 299]; see also *No Oil, Inc.* v. *City of Los Angeles* (1987) 196 Cal.App.3d 223, 247-248 [242 Cal.Rptr. 37].) In light of our conclusion the court misinterpreted the statute in any event, we need not decide this issue.

The court also found that the word "costs" in the phrase "at no increase in costs to the retired person" means "out of pocket costs" as distinguished from "premiums." And it decided that "health benefits plan includes not only (1) what a private company or the county offers in terms of benefits and premium charges, but also (2) how the premiums will be paid, e.g., by the employer, the employee or some other agency."

In concluding that county had not performed its duty, the court articulated the following chronology of events:

In January 1965 OCEA advised the board of supervisors that the Board of Retirement had recommended that health insurance be provided for retirees. The board of supervisors ordered its personnel department to study such a proposal. In February 1966 the board of supervisors adopted Resolution No. 66-124, calling for coverage, without cost, to retirees with 20 years of service, commencing July 1, 1966.

In April 1968 the Board of Retirement commenced making the premium payments, which action was approved by Resolution No. 68-329. In 1976 the Board of Retirement reduced the amount of its payments. And in July 1978 the county's treasurer recommended that the Board of Retirement cease making any payments. Three months later, the Board of Retirement voted to cease making payments for employees retiring after June 28, 1979, but to continue for those retiring before that date.

In February 1979 OCEA asked the Board of Retirement to reconsider its decision. It refused. In May, OCEA asked county to resume making payments in the amount "currently being paid" or more. County refused. Each year thereafter, OCEA renewed its request (but without making any reference to section 53205.2).

The assistant chief administrative officer had recommended to county that payments not be resumed because it was "not an effective expenditure of benefit dollars. Employees are no longer forced to retire under mandatory age limits and therefore may work for whatever additional periods may be required to increase their retirement benefit enough to offset the $22 to $44 monthly contribution." He further stated, "Another point that is generally misunderstood by employees is that the Retirement Board's contribution to retiree medical insurance premiums is not a vested right but rather is subject to the annual discretion of the Retirement Board and is further subject to availability of 'surplus' funds."

A report prepared in June 1979 indicated that the projected cost of paying for the health coverage increased from $46,602 in the first year to $1,187,802 in the fifteenth year.

The court acknowledged that county had, since 1979, contributed at least $5 per month towards the cost of providing a health benefits plan *and* had approved and kept in force health benefits plans which do not terminate upon retirement and which provide the same benefits for retired personnel as for active personnel. However, it found that county "has not in any way—by approval or selection or any other way—given preference to a health benefits plan or plans that so provide at no increase in cost to the retired person." This, said the court, constitutes a nonperformance of its duties. Further, *county's actions in "so approving and paying while declining in any way to give the said preference is so 'palpably arbitrary and unreasonable as to indicate an abuse of discretion.'"* (Italics added.) Judgment was entered July 2, 1990, and a peremptory writ of mandate issued the same day.[4]

## II.

 The thrust of county's position is that the trial court's interpretation of section 53205.2 is inconsistent with the statute's legislative objective. Maintaining that equal treatment of active and retired personnel is not mandated, it argues the section was intended to *fit within and not override* the discretion granted to local agencies to select, adopt or approve health benefit plans, as set forth in section 53201 et seq.

 The interpretation and application of a statutory scheme is a question of law which is subject to de novo review on appeal. (*Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951-952 [268 Cal.Rptr. 624].) Thus, we are not bound by evidence presented on the question in the trial court. (*California Teachers Assn.* v. *San Diego Community College Dist., supra,* 28 Cal.3d at p. 699.)[5]

---

[4]The judgment provided, in pertinent part, "That a peremptory writ of mandate issue commanding [county] to make inquiry and find facts regarding the availability and reasonableness of health benefit plans that satisfy the provisions of California Government Code § 53205.2; to wit: health benefit plans that do not terminate upon retirement of the employees affected and which provide the same benefits to retired persons as are provided to active employees and which are at no increase in cost to the retired person. [¶] Government Code § 53205.2 requires that the out of pocket costs to the retiree for such health benefit plans not exceed the out of pocket costs to the active employee whether such result is obtained by contribution of [county], other governmental agency, or otherwise. [¶] 3. [County] shall enact legislation by resolution or ordinance called for by California Government Code § 53205.2 in the light of the facts disclosed by that inquiry. . . ."

The writ contained essentially the same language.

[5]Citing *Atlantic Richfield Co.* v. *State of California* (1989) 214 Cal.App.3d 533, 538 [262 Cal.Rptr. 683], OCEA contends that because extrinsic evidence was introduced below, the general appellate principle of conflicting evidence applies; thus, any reasonable construction

In construing a statute, the court must ascertain the intent of the Legislature so as to effectuate its purpose. (28 Cal.3d at p. 698.) " 'An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' [Citations.] Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citations.]" (*Ibid.*)[6]

Furthermore, "[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . . [Citations.] [¶] But the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. ■ The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren* v. *Deukmejian, supra,* 45 Cal.3d 727, 735.)

Applying the foregoing principles, we conclude county's position is well taken. Section 53205.2 does not mandate equal treatment of active and retired employees.

---

by the trial court will be upheld. In making this argument, OCEA is referring to the testimony offered by Assemblyman Knox.

However, Knox's testimony did not constitute evidence of a conflicting nature. Rather, it represented his opinion as to how the statute should be interpreted.

[6]Pursuant to Code of Civil Procedure section 1858, the court's role in construing a statute "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

"Shall give preference" does not mean what the trial court said it meant.[7] Use of the word "preference," without more, implies the exercise of judgment. Had the Legislature intended the local agencies to "select" or "approve" a particular kind of plan, it could easily have said so. It did not. Instead, it mandated that local agencies, in choosing health benefit plans, give more favorable consideration to those plans which allow an employee to continue coverage at retirement. This does not mean, however, that such a health benefit plan is the only type of plan subject to the agency's approval. Nor does it mean the agency *must* create such a plan if none is available.

The court in *Ventura County Retired Employees' Assn.* v. *County of Ventura* (1991) 228 Cal.App.3d 1594 [279 Cal.Rptr. 676] (rev. den. June 27, 1991) reached the same result. Decided while this appeal was pending, *Ventura County* involved retired employees who, in 1987, were removed from the pool of active employees receiving health benefits. Under the new arrangement, they were given a choice between two health maintenance organizations (HMO's); active employees had the added option of participating in a comprehensive indemnity plan, i.e., a self-insured plan funded by the county. The only retirees permitted to participate in the indemnity plan were those who resided outside of an HMO service area or who elected to continue existing employee coverage for 18 months under the federal Consolidated Omnibus Budget Reconciliation Act (COBRA). During 1987 and 1988, due to a $996,000 deficit resulting from the payment of claims, the county added a $66.51 monthly charge to the HMO base premium rate offered to retirees. The retirees challenged this differential, and also claimed a monthly supplemental allowance they received from the Ventura County Retirement Board could not be used by county to offset the higher premiums. The trial court rejected the claim, and the appellate court, acknowledging the issue was one of first impression, affirmed.[8]

The court observed, "The spiraling cost of health care in America is simply unconscionable. The present high cost of medical insurance has unfortunately become a fact of life which in most instances results in disparate rates and medical coverage for those who can least afford it, including retirees." (228 Cal.App.3d at p. 1598.) Nonetheless, it concluded

---

[7] In interpreting the statute, the trial court also focused on the phrases "no increase in costs to the retired person" and "health benefit plans." However, regardless of the meaning attributed to these phrases, the meaning of "shall give preference" is dispositive as to whether equal treatment is mandated.

[8] County acknowledges *Ventura County* is distinguishable on its facts. For example, unlike the retirees in that case, the ones here are not restricted to one or two plans. Moreover, the premium rate charged to retirees is equal to that for active employees; only the out-of-pocket expense is different. Finally, the Orange County retirees do not enjoy the benefit of subsidies from the county's retirement board.

that section 53205.2 "does not require equal health care benefits for active employees and retirees. Had the Legislature so intended, it surely would have said so. Section 53205.2 requires only that counties give 'preference' to health benefit plans which furnish retirees and active employees the same health benefits at no cost increase to retirees. Such a 'preference' should only be made if health plans are commercially available and actuarially sound." (*Ibid.*)

OCEA contends the *Ventura County* court ignored the phrase "shall give preference," opting instead to interpret only the word "preference," and that in so doing failed to comply with Code of Civil Procedure section 1858. We are unimpressed. OCEA's position that the words "shall give" magically transform "preference" into a mandatory act is simply unfounded. True, the statute imposes a mandatory duty. However, it is a duty to exercise discretion in implementing the provisions of the statute, not a duty to select a cost-equalizing plan.

Nor is there merit to OCEA's contention the *Ventura County* decision ignores the Legislature's reference to the term "requirements" in the last sentence of the statute. According to OCEA, the Legislature's use of this word indicates it was of the view that more than mere "preferable possibilities" were being imposed. There is no question the statute does impose requirements. However, it is the *nature* of those requirements which OCEA is apparently unable to comprehend.

Our review of the entire statutory scheme discloses that the Legislature did not intend section 53205.2 to have the sweeping effect urged by OCEA. Section 53201 states that a local agency may provide for any health or welfare benefits for the benefit of its officers, employees, and retired employees, "subject to such conditions as may be established by it . . . ." Pursuant to section 53202, the local agency *may* approve plans which it determines "to be in the best interests of the local agency and the officers and employees electing to accept the benefits," or *may* contract with other insurers and that two or more alternative plans may be offered; authorization to formulate rules, regulations and procedures to implement the system is found in section 53202.2. Section 53205 *permits* the local agency to pay all or a portion of the premiums, dues or other charges for health and welfare benefits for its employees, both active and retired. Finally, section 53205.1 authorizes local agencies to pay all or part of the premium for dependent children of employees and officers.

In essence, the statutory scheme permits local agencies to consider the differences between retired and active employees in providing health bene-

fits. Read in the context of these other statutes, section 53205.2 does not impose a clear, present, or ministerial duty to provide the same medical benefit package to retirees and active employees. It merely requires consideration of health benefit plans which do not terminate upon retirement and which provide the same benefits for retirees as for active personnel, at no increase in cost to the retiree.[9]

Interpreting section 53205.2 to require all local agencies, regardless of their financial condition, to pay the entire cost of retirees' health insurance, is unreasonable and would have drastic consequences on the financial condition of those agencies. Instead of promoting adequate health care coverage, it could force the reduction or elimination of benefits for *both* active *and* retired employees. Furthermore, it appears that an objective of the legislation was to provide local government an opportunity to compete with the private sector of the job market in securing employees. Forcing the agencies to cut back on their contributions could render them at a serious disadvantage in the competitive market.[10]

Finally, in commenting upon the *Ventura County* court's suggestion that the appellant ask the Legislature to correct the confusion engendered by the statute,[11] OCEA asserts, "[T]he Legislature was already persuaded that the

---

[9]Further, county contends that if section 53205.2 already mandated the inclusion of retirees in plans of current employees, it would have been an idle act for the Legislature, in 1975, to enact Education Code section 7000. Subdivision (a) of that section requires local school districts to allow enrollment of retired personnel in the benefit plans of certificated employees. Subdivision (b) authorizes the school districts to "develop an experience claims rating for [retired personnel] and may, if appropriate, require those persons to pay different rates as a class."

[10]OCEA suggests we should be troubled by the weight the *Ventura County* court gave to the "fiscal impact" of its decision. (*Ventura County Retired Employees' Assn. v. County of Ventura, supra,* 228 Cal.App.3d at p. 1596.) It correctly points out that financial distress furnishes an insufficient basis for denying a writ. (*May v. Board of Directors* (1949) 34 Cal.2d 125, 134 [208 P.2d 661].) Indeed, "[a]rguments regarding financial costs incident to the granting of judicial relief, where such relief is compelled by law, are properly addressed to the Legislature, not to the courts. [Citation.]" (*Rogers v. Detrich* (1976) 58 Cal.App.3d 90, 103 [128 Cal.Rptr. 261].) And, as the court in our case noted, "the law bars such consideration as an excuse for noncompliance." However, as we have already explained, this is not a case of noncompliance.

We are troubled, however, by OCEA's position that it matters not how much the local agency contributes so long as it treats its active and retired employees the same. OCEA represents the interests of both active and retired personnel. At oral argument, we asked OCEA's counsel whether, in light of his position in this appeal, he viewed his representation of both categories of members as a conflict of interest. He said he did not.

[11]The *Ventura County* court concluded, "Having failed to persuade the board of supervisors, and there being no appropriate judicial remedy, appellant's recourse is to ask the Legislature

subject benefit should be provided, and consequently enacted Government Code § 53205.2." As this opinion makes clear, we cannot agree.[12]

In light of the foregoing, we conclude the trial court erred in interpreting section 53205.2 as imposing a ministerial duty to provide retired personnel with health benefits equal in cost to those provided to active employees. It follows that the court also erred in concluding mandamus was appropriate.

■ Mandamus lies to compel action by a governmental entity only when there is a clear, present and ministerial obligation to take such action. (*Taylor v. Board of Trustees* (1984) 36 Cal.3d 500, 507 [204 Cal.Rptr. 711, 683 P.2d 710].) If the act sought to be ordered involves the exercise of judgment and discretion, performance of the act is not a ministerial duty. (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 344 [124 Cal.Rptr. 513, 540 P.2d 609].) In essence, "the action commanded cannot invade the area of discretion with which an administrative agency is vested over a given subject matter. [Citations.]" (*Sklar v. Franchise Tax Board* (1986) 185 Cal.App.3d 616, 622 [230 Cal.Rptr. 42].) Mandamus was therefore improper here.[13]

Judgment reversed.

Sills, P. J., and Moore, J., concurred.

Respondents' petition for review by the Supreme Court was denied December 12, 1991. Mosk, J., was of the opinion that the petition should be granted.

to enact into law what it erroneously perceives in section 53205.2." (228 Cal.App.3d at p. 1599.)

[12]In light of our conclusion, we do not reach county's contentions that writ relief should be barred because OCEA (1) is guilty of laches and (2) failed to file the action within the applicable three-year statute of limitations for enforcing a statute (Code Civ. Proc., § 338, subd. (a)).

[13]We recognize that mandamus may issue "to compel an official both to exercise his [or her] discretion (if he [or she] is required by law to do so) and to exercise it under a proper interpretation of the applicable law. [Citations.]" (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442 [261 Cal.Rptr. 574, 777 P.2d 610].) Thus, mandamus might have been appropriate had OCEA established county abused its discretion in implementing the provisions of section 53205.2. As previously indicated, OCEA's petition alleged that county abused its discretion "by failing to give preference to a health benefit plan which provides the same benefits for retired personnel as for active personnel at no increase in costs to the retired personnel." However, the record reflects that OCEA presented no evidence on that issue and instead pursued only its theory that the statute mandates equal treatment of active and retired employees. Accordingly, that claim is deemed abandoned.