[No. B062074. Second Dist., Div. Three. July 23, 1993.]

DEPARTMENT OF HEALTH SERVICES OF LOS ANGELES
COUNTY, Plaintiff and Respondent, v.
CIVIL SERVICE COMMISSION OF LOS ANGELES COUNTY,
Defendant and Respondent;
LORRAINE MURRELL, Real Party in Interest and Appellant.

[No. B066174. Second Dist., Div. Three. July 23, 1993.]

THE MUNICIPAL COURT FOR THE LOS ANGELES JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Plaintiff and Appellant, v.
CIVIL SERVICE COMMISSION OF LOS ANGELES COUNTY,
Defendant and Respondent;
WINIFRED McCRAY-MOODY, Real Party in Interest and Respondent.

## COUNSEL

Hausman & Sosa, Jeffrey M. Hausman and Larry D. Stratton for Plaintiff and Appellant and for Plaintiff and Respondent.

Van Bourg, Weinberg, Roger & Rosenfeld, James Rutkowski, James G. Varga and Michael D. Evnin for Real Party in Interest and Appellant and for Real Party in Interest and Respondent.

No appearance for Defendant and Respondent.

## OPINION

**CROSKEY, J.**—In these consolidated appeals, we are asked to construe two Los Angeles County Civil Service Rules. These rules provide procedures for "progressive discipline," and ultimately for the discharge of county

employees who do not perform satisfactorily in their employment and who fail to improve their performance after warnings.[1]

The real parties in interest[2] contend that rule 20.04, subdivision (A)(4) and (A)(5), read together, require that: (1) if an employee is given an "improvement needed" performance evaluation under subdivision (a)(4) and placed on a six-month program for individual improvement, then the employee must be evaluated again within six months; and (2) if the new evaluation is "unsatisfactory," the employee must also be discharged within the same six months, or must automatically revert to a "competent" or higher performance rating.

The real party in interest in each appeal was discharged from employment with the County of Los Angeles and appealed her discharge to the Civil Service Commission of the County of Los Angeles (the Commission), claiming that the employer did not comply with rules 18.02, 20.04(A)(4) and 20.04(A)(5). In each case the Commission ordered the employee reinstated, and in each case the employer petitioned the superior court for a writ of mandate compelling the Commission to rescind its order. Separate judges of the superior court reached opposite conclusions in the two cases in spite of nearly identical factual circumstances. This was due to their differing interpretations of the applicable rules.

In case No. B062074, Murrell appeals from the judgment of the superior court *granting* the petition of the County of Los Angeles, Department of Health Services (the Department) for a writ of mandate to compel the Commission to reverse its order reinstating her. In case No. B066174, the County of Los Angeles, Los Angeles Municipal Court (the Municipal Court) appeals from the judgment of the superior court *denying* its petition for a writ of mandate to compel the Commission to reverse its order reinstating McCray-Moody.

---

[1]The rules at issue are rule 18.02 and rule 20.04, subdivision (A)(4) and (A)(5). (Los Angeles County Code, title 5, appendix 1, rules 18.02 and 20.04, subd. (A)(4) & (5).) For convenience, such rules are hereafter referred to as: (1) rule 18.02, (2) rule 20.04(A)(4) or subdivision (A)(4) and (3) rule 20.04(A)(5) or subdivision (A)(5).

Rule 18.02 provides the grounds and procedures for discharge of permanent employees; rule 20.04(A)(4), provides the grounds for and the procedures governing a performance evaluation of "improvement needed"; rule 20.04(A)(5) provides the grounds for and the procedures governing a performance evaluation of "unsatisfactory." For the full text of these rules see footnotes 6 and 7, *post.*

[2]The real parties will generally be referred to as "the real parties," but will be described by their names when referred to individually. In case No. B062074, the real party is Lorraine Murrell (Murrell) and in case No. B066174, the real party is Winifred McCray-Moody (McCray-Moody).

We find the construction of the rules urged by each of the real parties overstates the requirements of the rules. We therefore shall affirm the judgment of the trial court with respect to Murrell (case No. B062074) and reverse the judgment with respect to McCray-Moody (case No. B066174).

FACTUAL AND PROCEDURAL BACKGROUND

The sole issue in each of these cases was procedural and raised the question of whether the real party's employing agency had complied with applicable deadlines for reevaluating and discharging an employee. Each real party contended the employing agency did not comply with the deadlines, and therefore their respective discharges were invalid, *regardless of the merits of each discharge*. Accordingly, neither real party contested her discharge on the merits. Under these circumstances, we need not consider or set forth in detail the factual allegations underlying the discharges, but may determine each case on the basis of the following short chronological review of the relevant background facts.

1. *The Murrell Case.*

Murrell was a permanent employee with the Department, serving as a clerk at an information desk at the Olive View Medical Center. In 1988 and 1989, Murrell apparently developed a pattern of poor attendance, rudeness to the public, and insubordination to her supervisors. Based upon these alleged deficiencies, Murrell received, in her June 1989 performance evaluation, a rating of "improvement needed." As a result of this evaluation, rule 20.04(A)(4) required that Murrell be reevaluated within six months and receive an evaluation of "competent" or better, or receive an evaluation of "unsatisfactory" and be discharged. On June 13, 1989, the Department placed Murrell on a plan for individual improvement, which was to be effective from June 15 to December 15, 1989. The plan incorporated five performance goals which were to be achieved within the improvement period. On November 13, 1989, the Department evaluated Murrell's performance as "unsatisfactory" and served her with a notice of intent to discharge her. On December 21, 1989, six days after the conclusion of the six-month improvement period, the Department notified Murrell that she was discharged effective December 22, 1989.

Upon Murrell's appeal of the discharge, the Commission held a hearing on March 29, 1990. At the hearing, Murrell did not contest the factual basis for the discharge, but argued the discharge was invalid because the Department failed to discharge her within six months of the "improvement needed" rating. In support of her procedural argument, she introduced the records in

five previous cases, in which the Commission had interpreted the rules to require a discharge within the improvement period and had reinstated discharged or reduced employees, where the employing agency had not effected a discharge within that time frame.

The hearing officer found that the Department had proven an adequate basis for the discharge, but nevertheless recommended that the Commission order Murrell reinstated, based upon the Department's failure to discharge her within six months of the "improvement needed" rating. On August 1, 1990, the Commission accepted the hearing officer's recommendation and ordered Murrell reinstated.

On October 29, 1990, the Department petitioned the superior court for a writ of mandate.[3] A hearing on the writ petition took place on August 22, 1991. At the hearing, the superior court stated it found no basis in the civil service rules or in public policy for the Commission's construction of the applicable rules. The court thus granted the writ. Murrell's timely appeal followed.

2. *The McCray-Moody Case.*

McCray-Moody was a permanent employee of the Municipal Court, serving as a secretary in the central arraignment court. From 1987 through 1989, she apparently developed a pattern of poor attendance and for this reason was given a rating of "improvement needed" in her February 1989 performance evaluation and placed in a plan for individual improvement effective February 26 to August 27, 1990.[4] The plan set forth six specific goals to be met within the improvement period. On August 27, 1990, she was given a performance rating of "unsatisfactory" and served with a letter of intent to discharge. On September 26, 1990, approximately a month *after* the conclusion of the six-month individual improvement period, she was discharged effective September 28.

Upon McCray-Moody's appeal of the discharge, the Commission held a hearing on December 17, 1990. At the hearing, neither party addressed the issue of whether there was a factual basis for the discharge, but addressed only the issue of whether the discharge was timely. Like Murrell, McCray-Moody introduced the records in five previous cases in which the Commission had interpreted the rules to require reversion to the employee's former

---

[3]An amended petition was filed on December 6, 1990. A notice of motion and motion for peremptory writ of mandate was filed on July 17, 1991.

[4]All parties stipulated that August 27, 1990, was the appropriate date.

rating if a discharge is not effected within the improvement period. The same hearing officer who had presided at the Murrell hearing found the Municipal Court had violated civil service rules by failing to discharge McCray-Moody within six months of the "improvement needed" rating, and therefore recommended that the Commission order her reinstated. On March 13, 1991, the Commission accepted the hearing officer's recommendation and ordered reinstatement.

On May 20, 1991, the Municipal Court petitioned the superior court for a writ of mandate.[5] A hearing on the petition took place on January 14, 1992 before a different judge from the one who heard the Murrell action. This second judge took the matter under advisement at the conclusion of the hearing, and subsequently denied the writ. The Municipal Court's timely appeal followed.

## DISCUSSION

1. *Standard of Review and Principles of Construction.*

■ The construction of the applicable county rules is a question of law which we review independently. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Botello* v. *Shell Oil Co.* (1991) 229 Cal.App.3d 1130, 1134 [280 Cal.Rptr. 535].) The construction of county ordinances and rules is subject to the same standards applied to the judicial review of statutory enactments. ■ In construing a legislative enactment, a court must ascertain the intent of the legislative body which enacted it so as to effectuate the purpose of the law. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406]; *Orange County Employees Assn.* v. *County of Orange* (1991) 234 Cal.App.3d 833, 841 [285 Cal.Rptr. 799].)

The court first looks to the language of the statute, attempting to give effect to the usual, ordinary import of the language and seeking to avoid making any language mere surplusage. (*Brown* v. *Kelly Broadcasting Co.,* *supra,* 48 Cal.3d at p. 724; *Orange County Employees Assn.* v. *County of Orange, supra,* 234 Cal.App.3d at p. 841.) Significance, if possible, is attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. (*Orange County Employees Assn.* v. *County of Orange, supra,* 234 Cal.App.3d at p. 841; *Fierro* v. *State Bd. of Control* (1987) 191 Cal.App.3d 735, 738-739, fn. 2 [236 Cal.Rptr. 516].) The various parts

---

[5]A notice of motion and motion for a peremptory writ of mandate was filed on November 25, 1991.

of a statute must be harmonized by considering each particular clause or section in the context of the statutory framework as a whole. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *Orange County Employees Assn.* v. *County of Orange, supra,* 234 Cal.App.3d at p. 841.)

The enactment must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intent of the lawmakers, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. To that end, the court must consider, in addition to the particular language at issue and its context, the object sought to be accomplished by the statute, the evils to be remedied, and public policy. (*Lungren* v. *Deukmejian, supra,* 45 Cal.3d at p. 735; *Fierro* v. *State Bd. of Control, supra,* 191 Cal.App.3d at pp. 738-739, fn. 2.)

If a statute is ambiguous, the construction given it by the agency charged with its enforcement is entitled to consideration if such construction has a reasonable basis. (*Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816 [201 Cal.Rptr. 165, 678 P.2d 378]; *Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 866 [167 Cal.Rptr. 820, 616 P.2d 802]; *Cal. Drive-in Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 294 [140 P.2d 657].) Of course, any legislative enactment must be construed in harmony with the Constitution. (*California Housing Finance Agency* v. *Elliot* (1976) 17 Cal.3d 575, 594 [551 P.2d 1193].)

*2. If a Civil Service Employee Receives an "Improvement Needed" Performance Rating Followed Within Six Months by an "Unsatisfactory" Rating, the Employee Must Be Discharged or Reduced Within a Reasonable Time After the "Unsatisfactory" Rating.*

 *a. The Language of the Rules.*

Looking to the language of the rules at issue in this case, nothing in rule 20.04(A)(4) indicates that an employee who is rated "improvement needed" must either be discharged within six months of such rating or revert to his or her former status.[6] The rating of "improvement needed" is the third of four possible performance ratings a county employee can receive in a

---

[6]Rule 20.04 provides in pertinent part as follows:

"Rating standards. Except for employees covered by Rule 20.11, overall ratings shall be expressed by the following terms:

"A. Permanent Employees.

". . . .

"4. 'Improvement needed': This rating indicates that:

"a. A significant part of the work performance is below the standard of performance required for the position, and

required annual performance evaluation. Such rating indicates that a significant part of the employee's performance is substandard for the position, but it is reasonable to expect that the employee will bring performance up to acceptable standards. Factual evidence must be presented in writing to substantiate an "improvement needed" evaluation.

When an "improvement needed" evaluation is given, the employee must be given a new evaluation within six months, rather than the year otherwise allowed under rule 20.02. The six-month period can be extended under either of two circumstances: (1) if the employee is on approved leave for a period of time during the six months, the improvement period can be extended for the length of the leave; (2) if adequate justification is provided and the personnel director approves, the new evaluation can be waived for up to an additional six months. The new evaluation must be either higher or lower than "improvement needed." If no new evaluation is submitted at the end of the six months or any extension, the employee automatically reverts to his or her former status.

The foregoing requires plainly enough that a *new evaluation* be made within six months unless an extension is granted. However, nothing in the language requires a discharge within the same six months if the new evaluation is "unsatisfactory."

The real parties contend, though, that rule 20.04(A)(5) supplies the additional requirement. That subdivision defines the rating of "unsatisfactory" as indicative that a substantial part of the employee's performance is inadequate and definitely substandard for the position. Subdivision (A)(5) requires

---

"b. It is reasonable to expect that the employee will bring performance up to acceptable standards.

"Factual evidence must be presented in writing to substantiate this rating. When this rating is given a new evaluation must be made within a period not to exceed six months from the day on which the employee is served with the 'improvement needed' evaluation, except that the rating period may be extended by the length of any approved leave during the six months. Such evaluation shall bear an overall rating other than 'improvement needed.' If no follow-up rating is submitted at the end of six months, the employee will revert to his/her immediately prior status. If an employee is absent from duty prior to the period while on approved leave prior to the completion of such six month period, the appointing power may, with the approval of the director of personnel, evaluate the six-month period on the basis of actual service, exclusive of the time away on leave. If adequate justification is provided, and with the approval of the director of personnel, the requirement of a new evaluation bearing a rating of "competent" or "unsatisfactory" within six months may be waived for up to an additional six months. . . .

"5. 'Unsatisfactory': a substantial part of the work performance is inadequate and definitely inferior to the standard of performance required for the position. Factual evidence must be presented in writing to substantiate this rating. When this rating is given it must be accompanied by a discharge or reduction in those cases in which the employee is still in service."

factual evidence to be presented in writing to substantiate an "unsatisfactory" rating. Of particular significance in this case, when an "unsatisfactory" rating is given it must be "accompanied by a discharge or reduction in those cases in which the employee is still in service."

It is this requirement that an "unsatisfactory" rating be "accompanied" by a discharge which Murrell and McCray-Moody rely upon to support their contention that a discharge must occur within six months of an "improvement needed" rating or not at all. However, we find nothing in the language of subdivision (A)(5) to persuade us that "accompany" as used there means "accompany simultaneously" or "accompany within any time limit for the making of the evaluation." Obviously, events which are separated by unreasonably long stretches of time do not "accompany" one another. Still, in its usual and ordinary sense, "accompany" can mean "to add or join to" or "to occur in association with," with no implication of simultaneity, or indeed, of any clearly defined temporal connection. (Webster's 3d New Internat. Dict. (1981); Black's Law Dict. (5th ed. 1979).) There is thus no basis in the language of subdivision (A)(5) or in the term "accompany," as used in that subdivision, which could reasonably mean anything more than that a discharge, presumably within a reasonable time, is mandatory if an employee is rated "unsatisfactory."

This conclusion gains support from the provisions of rule 18, which establishes procedures for the suspension, discharge, reduction in rank or compensation, and resignation of civil service employees. Of particular import are the provisions of rule 18.02, providing for the discharge or reduction of permanent employees,[7] and rule 18.07, providing for notice to probationary employees of a discharge or reduction.[8]

---

[7] Rule 18.02, subdivision (a) provides: "A permanent employee in a nonsupervisory class, a supervisory class in a bargaining unit as certified by ERCOM, or a managerial class in the Sheriff, may be discharged from county service or reduced in rank or compensation, and a permanent employee in all other supervisory classes and all other managerial classes may be discharged from county service or reduced in grade or compensation, after appointment or promotion is complete, and after completion of the employee's first probationary period (except as provided in Rule 18.06). Before such discharge or reduction shall become effective, the employee shall receive a written notice from the appointing power of intent to invoke discharge or reduction, and specific grounds and particular facts therefor. The employee shall then be allowed a reasonable time, not to exceed 10 days, to respond orally or in writing to the appointing power before the discharge or reduction shall become effective."

[8] Rule 18.07, subdivision (a) provides:
"Written notice of the discharge or reduction of a probationer and of the rights under Rule 18.05 granted probationers shall be given to such probationers before midnight on the last day of the probationary period. The probationer may, within 10 business days or the mailing or hand delivery to him/her of the notice of discharge or reduction, file an appeal with the

In compliance with constitutional requirements enunciated by our Supreme Court in *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], rule 18.02 provides certain procedural requisites *before which* a discharge cannot be effective. Under that rule, a notice of intent to discharge must be provided before the effective date of the discharge. The notice must set forth the factual grounds for the discharge. The employee must then be given "a reasonable time," not to exceed 10 days, to respond. However, rule 18.02 sets no time limit *within which* a discharge must be accomplished under any particular circumstances.

By contrast, rule 18.07 provides that when a probationary employee is discharged or reduced, "[w]ritten notice of the discharge or reduction of a probationer and of the rights under rule 18.05 granted to probationers shall be given to such probationers before midnight on the last day of the probationary period." Plainly, the board of supervisors knew how to establish a deadline for accomplishing a discharge or reduction when it wished to do so. The absence of any such deadline relating to the discharge or reduction of a permanent employee who has been rated "improvement needed" thus strongly undercuts the contention that a deadline for such a discharge was intended.

Indeed, when rules 18.02, 20.04(A)(4), and 20.04(A)(5) are considered together, the most reasonable inference is that the supervisors' intent was: (1) an employee rated "improvement needed" is to be given up to a full six months at the employing agency's discretion to accomplish the goals established in the improvement plan; (2) the improvement period can be extended under limited circumstances; (3) if performance remains inadequate, the employee is to be rated "unsatisfactory"; (4) if rated "unsatisfactory," the employee must be discharged according to the procedures provided in rule 18.02; and (5) the procedures of rule 18.02 include a period of up to ten days for a *predischarge* response, as required by *Skelly* v. *State Personnel Board, supra.* Obviously, this scheme permits an effective discharge to be delayed until after the end of the six-month improvement period, as such delay is unavoidable in cases where the employing agency allows the employee a full six months to improve.

b. *Constitutional Considerations and Considerations of Public Policy.*

The employing agencies argue that in order to construe the rules in harmony with the Constitution, they must be construed to allow an effective

---

director of personnel. Such an appeal must be in writing and shall contain specific, detailed information upon which the appeal is based. The director of personnel shall determine whether or not to consider the appeal, or whether or not the discharge or reduction is justified."

discharge to be delayed for a reasonable time beyond the six-month im-
provement period, because such delay is necessary to afford the employee
the essential due process rights set forth in *Skelly, supra,* 15 Cal.3d 194. This
argument overstates the case, but only slightly. Murrell and McCray-Moody
correctly point out that an employing agency controls the timing of perfor-
mance evaluations as well as any *Skelly* proceedings and can easily perform
an evaluation and issue an "unsatisfactory" rating, if merited, in adequate
time to comply with *Skelly.* Nevertheless, the construction of the rules
proposed by Murrell and McCray-Moody effectively places an employee's
rights under *Skelly* at odds with any inclination an employing agency might
have to give the employee a full six months to improve performance. The
text of the rules simply provides no persuasive basis for creating such
tension.

Nor can we discern any public policy reason for requiring an employee
who is rated "improvement needed" and then "unsatisfactory" to be effec-
tively discharged within six months of the "improvement needed" rating.
The civil service rules exist "for the purpose of carrying out the Charter
provisions, of assuring the continuance of the merit system, of promoting
efficiency in the dispatch of public business, and of assuring all employees
in the classified service of fair and impartial treatment . . . ." (Rule 1.02.)
Doubtless, the county agencies' interest in efficiently carrying out public
business and an employee's interest in fair and impartial treatment dictate
that an employee whose performance is "below the standard of performance
required for the position," but is reasonably likely to improve should
be given a reasonable time in which to bring performance up to standard,
but must successfully do so within some definite period of time or be
removed. It is in no one's interest for such an employee to remain in limbo
indefinitely.

For this reason, the requirement that such an employee be *rated* and found
either competent or unsatisfactory within six months is an eminently reason-
able one. However, we can discern no substantial benefit to either the
employee or the public agency to be gained from the further requirement that
an effective discharge must occur, if at all, within the time allowed for the
new rating.

██ Murrell and McCray-Moody contend they are entitled to have the
civil service rules strictly applied. While they are quite right on this point
(*California Sch. Employees Assn.* v. *Personnel Commission* (1970) 3 Cal.3d
139, 145 [89 Cal.Rptr. 620, 474 P.2d 436]; *Birdsall* v. *Carrillo* (1991) 231
Cal.App.3d 1426, 1431 [282 Cal.Rptr. 504]), it does not follow that an

employee is entitled to have the rules construed as favorably to the employee as the text will bear, and then, as so construed, strictly applied. An employee's entitlement to strict application of the rules thus has no bearing on how a particular rule is to be construed in the first instance.

At any rate, we are not persuaded that their construction of rules 18.02 and 20.04(A) is favorable to employees in general, although it may be of some benefit to these two employees in the particular procedural posture of these cases. As a general matter, for example, we can see no benefit to an employee in being discharged before the end of six months rather than after—certainly none which would outweigh the benefit of having a full six months to achieve all performance goals and thus save his or her job. Indeed, the sole benefit we can imagine in requiring a discharge to occur before the end of the six-month improvement period is the chance the employing agency might blunder and miss the deadline, giving an unimproved employee who has been reevaluated and found unsatisfactory the windfall of a bit more time to remain on the public payroll while the agency dots its "i's" and crosses its "t's."[9]

c. *Significance of Prior Decisions by the Commission in Similar Cases.*

Murrell and McCray-Moody argue that the Commission has consistently interpreted the rules to require an effective discharge or reduction within six months, or the employee automatically reverts to a "competent" performance rating or better. On appeal, as at each administrative hearing and each hearing in the trial court, they cite five previous civil service appeals in which the Commission interpreted the rules to require that a discharge of an employee, who had been rated "improvement needed," be effected within six months of the "improvement needed" rating if the discharge is to be effective. In each of the five cases cited, the Commission ordered reinstatement of the employee on grounds that the purported discharge or reduction of the employee had occurred beyond the six months

---

[9]Contrary to the real parties' contention, this would not necessarily take an additional six months. Rule 20.02 requires an evaluation of each employee's performance *at least* once per year, but places no limit on how much more frequently evaluations can take place. Thus, no reason exists under the letter of the rules why an agency could not *immediately* reevaluate an unsatisfactory employee who was saved by the six-month bell, issue a rating of "unsatisfactory" instead of "improvement needed," and then terminate the employee, all within ten days or less of discovering its error. Thus, there would appear to be no real advantage to the employee by a construction of the rule in the manner urged by Murrell and McCray-Moody.

held to be allowed by the rules.[10] Based upon the five cited cases, Murrell and McCray-Moody contend their interpretation of the rules is the same as that of the Commission and is thus entitled to deference by the courts.

We agree that the construction given to a statute by the agency charged with its enforcement is entitled to consideration. (*Ontario Community Foundations, Inc.* v. *Bd. of Equalization, supra,* 35 Cal.3d at p. 816; *Board of Supervisors* v. *Lonergan, supra,* 27 Cal.3d at p. 866.) However, construction of a statute by the enforcing agency is relied upon only to resolve ambiguities; such reliance is justified only when there is an ambiguity. (*Board of Supervisors* v. *Lonergan, supra,* 27 Cal.3d at p. 866.) Further, only an agency's regularly promulgated and consistently applied interpretation of legislation is entitled to deference. (*Johnston* v. *Department of Personnel Administration* (1987) 191 Cal.App.3d 1218, 1225 [236 Cal.Rptr. 853].) Finally, and above all, an administrative agency's construction of legislation is only appropriate where the construction has a reasonable basis in the text of the legislation or the policy which underlies it. (*Ontario Community Foundations, Inc.* v. *State Bd. of Equalization, supra,* 35 Cal.3d at p. 816.)

The employing agencies contend that five decisions by separate hearing officers do not constitute a regularly promulgated or consistently applied interpretation of the rules. While we are inclined to agree, we need not decide the question because, in any event, we find no occasion to rely upon the five decisions or the construction of the rules which they appear to adopt. We have already concluded there is no ambiguity in the rules providing for the discharge of an employee who fails to improve performance within six months after receiving an "improvement needed" evaluation. Neither do we find a reasonable basis either in the text of the rules or in public policy for

[10]Of the five cases cited by the real parties, only one is truly on point. In that case, a department of social services eligibility supervisor was rated "improvement needed" on May 16, 1986, served with a notice that she was not meeting her improvement goals on September 15, 1986, and served with a notice of intent to reduce to the position of eligibility worker on November 14, 1986, a date within six months of the "improvement needed" rating. However, the hearing officer recommended that the reduction be invalidated, because it was not made *effective* until November 26, 1986, a date more than six months after the "improvement needed" rating. The Commission accepted this recommendation.

In an effort to contradict the claim that the Commission has consistently construed the rules as the real parties construe them, the employing agencies introduced in the Murrell case the records of two cases in which a discharge was effected more than six months after issuance of an "improvement needed" rating, but the discharges were not dismissed for that reason. In one of those, the discharge was upheld by the Commission; in the other, the discharge was dismissed as unmerited, and the employee was instead given a 30 day suspension. Neither case is of real help to the employing agencies, as the employee did not raise the issue of the timeliness of the discharge in either case. Perhaps in recognition of this, the agencies have not cited the cases in their briefs on appeal.

the interpretation of the rules that is urged by the real parties. The final responsibility for the proper interpretation of a statute or an administrative rule lies with the court. (*Ontario Community Foundations, Inc.* v. *Bd. of Equalization, supra,* 35 Cal.3d at p. 816; *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]; *Action Trailer Sales, Inc.* v. *State Bd. of Equalization* (1975) 54 Cal.App.3d 125, 132-133 [126 Cal.Rptr. 339].)

## CONCLUSION

The rigid rule urged by Murrell and McCray-Moody which would require an effective discharge within six months of an "improvement needed" rating has no basis in law or policy and might impair the ability of public agencies to make personnel management decisions in the most efficient and fair manner. We therefore conclude a discharge which follows an "improvement needed" performance rating is not rendered invalid by the mere circumstance that it is not effected within that six-month period.

 Nonetheless, such a discharge must occur within a *reasonable* time of any "unsatisfactory" rating in order to comply with the requirement that a discharge "accompany" such a rating.[11] The court in the case of Murrell impliedly found that the seven days from the end of her six-month improvement period to her effective date of discharge was reasonable. However, in the case of McCray-Moody, the court denied the requested writ of mandate on the sole basis that her discharge occurred after the end of the six-month improvement period, and thus had no occasion to address the question of whether the discharge, which occurred a month after the end of the six-month period, occurred within a *reasonable* time. We express no view on the length of time after an "unsatisfactory" rating beyond which a discharge would be unreasonable. However, we have no doubt that a discharge occurring within a month after such a rating is reasonable, and we hold it to be reasonable as a matter of law.

## DISPOSITION

The judgment of the superior court in case No. B062074, *Department of Health Services* v. *Civil Service Com.,* is affirmed. The judgment in case

---

[11]The real parties argue that if a county agency is not required to discharge an employee needing improvement within precisely six months of an "improvement needed" rating if performance is not improved, then nothing prevents the agency from waiting weeks or months or years to discharge the employee. Initially, as a practical matter, no employer is likely to retain a truly unsatisfactory employee for weeks or months or years. However, the better answer to the real parties' *reductio ad absurdum* argument is that general principles of laches would operate to invalidate any discharge which occurred after the employing agency issued an "unsatisfactory" rating, retained the employee for an unreasonably long time thereafter, then purported to discharge the employee on the basis of the stale "unsatisfactory" rating.

No. B066174, *Municipal Court* v. *Civil Service Com.,* is reversed and the cause is remanded to the trial court for further proceedings in conformity with this opinion. In case No. B062074, costs are awarded to the respondent County of Los Angeles (Department of Health Services); in case No. B066174, costs are awarded to the appellant County of Los Angeles (Los Angeles Municipal Court).

Klein, P. J., and Kitching, J., concurred.

The petition of all real party in interest for review by the Supreme Court was denied October 28, 1993. Kennard, J., was of the opinion that the petition should be granted.