[No. D030683. Fourth Dist., Div. One. Sept. 24, 1999.]

KATHY DOBBINS et al., Plaintiffs and Appellants, v.
SAN DIEGO COUNTY CIVIL SERVICE COMMISSION, Defendant and
Respondent.

COUNSEL

Law Offices of Everett L. Bobbitt, Everett L. Bobbitt and Bradley M. Fields for Plaintiffs and Appellants.

John J. Sansone, County Counsel, Diane Bardsley, Chief Deputy County Counsel, Ralph W. Peters and C. Ellen Pilsecker, Deputy County Counsel, for Defendant and Respondent.

OPINION

HUFFMAN, Acting P. J.—Plaintiffs Kathy Dobbins and William McDaniel, joined by their labor representative, the San Diego Deputy Sheriff's Association (the Assn. or collectively Officers), appeal a judgment denying their petition for a writ of mandate and declaratory relief to require defendant San Diego County Civil Service Commission (the County or the Commission), to provide them administrative hearings on their employer's decision to transfer them from certain field positions to other types of assignments. (Code Civ. Proc., §§ 1085, 1060.) Officers contend they should be entitled under the San Diego County Civil Service Rules[1] (Civil Service Rules) to a hearing to appeal those personnel decisions, which arguably resulted in their removal from their former positions or assignments and, with respect to McDaniel, a reduction in compensation (lack of overtime opportunities). We interpret the rule as not requiring such hearings and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In their petition and on appeal, Officers allege that certain work-related reassignments of their duties and duty location constitute such removals from their positions and a loss of pay that may only be imposed for cause, after hearing, under a recent decision of this court, *Head* v. *Civil Service Com.* (1996) 50 Cal.App.4th 240, 243-244 [57 Cal.Rptr.2d 857] (*Head*). The relevant facts are as follows: Dobbins is employed as a sergeant in the San Diego County Sheriff's Office (SDSO). In 1996, she was working as an administrative sergeant at the Santee SDSO station. She was under some physical restrictions relating to her ability and willingness to wear a gunbelt and body armor. In 1997, she was transferred to a sergeant's position at the George Bailey Detention Facility, which she alleges was done "because of concerns regarding [her] physical ability to perform her job." She filed an

---

[1] All rule references are to the San Diego County Civil Service Rules.

administrative appeal under the County's Civil Service Rules, rule VII, section 7.4.[2]

In 1996, McDaniel was assigned as a deputy sheriff at the Fallbrook SDSO station. He fell asleep on the job several times without apparent cause. In November 1996, SDSO officials requested he undergo a physical exam. When McDaniel refused, he was placed on restricted duty. In March 1997, SDSO restricted McDaniel from working any overtime outside the Fallbrook command. As of October 1997, he was not allowed to interview suspects. McDaniel appealed on the basis that he had been removed from his position pending the medical exam, and he had suffered a loss in compensation due to the overtime restrictions.

Officers' requests for hearings were denied by hearing officers. The Commission upheld the decisions to deny the appeals, finding it had no jurisdiction to proceed, and the job actions complained of were not appealable under the civil service rules because Officers had not been disciplined, nor removed from their positions, nor had there been an effect on their regular compensation.

Officers then filed this petition for writ of mandate in superior court, seeking mandate or declaratory relief requiring the Commission to provide them an evidentiary hearing on the transfer and reassignment decisions under rule VII, section 7.4. The court denied their petition and entered judgment accordingly. ▇▇▇ Officers appeal.[3]

## DISCUSSION

## I

▇ The parties agree that this question of the proper interpretation of civil service rules is subject to de novo review as a pure question of law. (*American Federation of State etc. Employees* v. *County of Los Angeles*

---

[2]Rule VII, section 7.4 provides in pertinent part: "An employee who has completed the required probationary period, who is removed, suspended or reduced in rank or compensation, may . . . appeal in writing to the Civil Service Commission from such order."

[3]At oral argument before the trial court, counsel for Officers stated that McDaniel had recently been placed back on duty; however, counsel did not believe the issues were moot as to him due to his professional reputation, etc. We agree. The matter should not evade review since important issues of substantial and continuing public interest have been presented, even though some of them " 'may have been rendered moot and of no further immediate concern to the initiating parties.' [Citation.]" (*Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 868-869, fn. 8 [239 Cal.Rptr. 626, 741 P.2d 124].) Also, where the same controversy between parties may recur, appellate review is proper despite mootness concerns. (*Grier* v. *Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 330 [127 Cal.Rptr. 525].)

(1983) 146 Cal.App.3d 879, 884 [194 Cal.Rptr. 540].) We may apply the same general rules that are used for statutes to the construction and interpretation of rules and regulations of administrative agencies. (*Head, supra,* 50 Cal.App.4th at pp. 243-244.) As explained in *Department of Health Services* v. *Civil Service Com.* (1993) 17 Cal.App.4th 487, 495 [21 Cal.Rptr.2d 428] (*DHS*): "The enactment must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intent of the lawmakers, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. To that end, the court must consider, in addition to the particular language at issue and its context, the object sought to be accomplished by the statute, the evils to be remedied, and public policy. [Citations.] [¶] If a statute is ambiguous, the construction given it by the agency charged with its enforcement is entitled to consideration if such construction has a reasonable basis. [Citations.]"

Like any other statutory scheme, the rules should be read as a whole, to give meaning to the words as used in context. (*Poway Unified School Dist.* v. *Superior Court* (1998) 62 Cal.App.4th 1496, 1503 [73 Cal.Rptr.2d 777].) The issues presented here revolve around the meanings to be given specific terms used in the rules, as applied to these facts: "Removal," "position," and "reduction in compensation." Although the rule relied on by Officers here, rule 7.4, appears in the section entitled "Discipline," Officers do not concede any limitation of their rights to a hearing by reason of that section heading, arguing that the rules regarding hearings should apply to nondisciplinary removals, based in part on the broad language used in *Head* regarding hearing rights.

## II

To analyze Officers' claims, we should first establish the proper scope of the *Head* decision. It is well established that the language used in an appellate court opinion is to be understood in light of the facts and issues before the court issuing the opinion. (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) "[A]n opinion is not authority for a proposition not therein considered." (*Ibid.*; see 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 945 et seq., pp. 986-989.) In *Head,* this court was dealing with the facts that Head, a deputy marshal, had received notice of charges (deficient performance) and had been subject to disciplinary action (removal from a field training position for which he received premium pay). We used a plain meaning approach to conclude that under those circumstances, he had been "removed" from the position of field training officer. (*Head, supra,* 50 Cal.App.4th at p. 244.)

In reaching that conclusion in *Head,* this court examined the meaning of the term "removal," noting it is not defined in the glossary section of the

rules. We disagreed with the County's position in that case that the definition in the rules of the term "dismissal" (rule XVII, § 17.1.1) should also define "removal." (A dismissal is defined as "[t]he involuntary termination of an appointment and the removal of an employee from a position.")[4] To give meaning to the words, we were guided by the list of job actions given in section 7.4 as appealable actions: Removal, suspension, or reduction in rank or compensation (not dismissal). (*Head, supra,* 50 Cal.App.4th at p. 244.) Within the plain meaning of the word "removed," Head had been removed from his former position. (*Ibid.*)

Next, in *Head* we noted that, even assuming he had not been removed from his position, he certainly was reduced in compensation since he was no longer receiving the $30 premium per pay period he had previously received as consideration for his service in the position of field training officer. (*Head, supra,* 50 Cal.App.4th at p. 245.) We then noted: "The Commission's reluctance to hear appeals of removals from temporary assignments involving only loss of premium pay is understandable. However, the appropriate way to preclude such appeals is to amend the rules to clearly exclude such matters from the Commission's appellate jurisdiction." (*Id.* at p. 245, fn. 5.)

██ From all this language in *Head,* Officers generalize, first, that a transfer of an employee between duty stations that results in changed duties is equivalent to a disciplinary removal from a temporary assignment, involving a loss of premium pay, such as was involved in *Head,* and which triggered a hearing right. In their view, it should make no difference if the employee retains the same rank and regular pay rate, or if the transfer was not disciplinary in nature. Second, Officers interpret *Head* as interpreting the rules defining the term, "position," ("[a] group of continuing duties and responsibilities assigned by an appointing authority and requiring the full-time or part-time employment of one individual"; rule XVII, § 17.1.1), to allow a broad definition, covering a temporary assignment at a particular location or type of facility, even if that assignment does not involve a change in rank or base pay.

We find several problems with these assumptions. First, our decision in *Head* was made in the context of a disciplinary removal and interpreted the

---

[4]Also in *Head,* we used the definitional section of the rules for the meaning of "position:" " '[A] group of continuing duties and responsibilities assigned by an appointing authority and requiring the full-time or part-time employment of one individual.' (Rule XVII, § 17.1.1.)" (*Head, supra,* 50 Cal.App.4th at p. 244, fn. 4.) We stated it was clear that the job of a field training officer fell within that definition of position, and noted that the disciplinary order informed Head he was being "removed" from his position as a field training officer. (*Ibid.*)

rules regarding discipline. (Rule VII, § 7.4.) Even the broad language used in that opinion was used only in that particular factual context, and should not be extended beyond it. Second, it is well established that an employee enjoys no fundamental or vested right to continuation in a particular job assignment. (*Howell* v. *County of San Bernardino* (1983) 149 Cal.App.3d 200, 205 [196 Cal.Rptr. 746].) If the disciplinary rules only expressly apply in the disciplinary context, there is no other authorization for the type of hearing requested here.

Next, even if there were changes in the continuing duties and responsibilities that Officers experienced due to their new assignments, this record reveals no disciplinary changes in position nor removals from positions that would trigger a hearing right under the rules. An appointing authority must have the flexibility to utilize its personnel in a manner appropriate for the overall needs of the agency, as well as the employees. Here, the sheriff and the Commission are each interpreting the disciplinary rules as not being triggered absent some indication of disciplinary measures. Dobbins was transferred due to her apparent inability to use particular equipment (gunbelt and body armor). McDaniel had his duties restricted due to safety and other concerns arising from his tendency to fall asleep on duty.[5] However, these reassignments were not cast in disciplinary language. Generally, a court will defer to the construction given to an ambiguous statute or rule by the agency charged with its enforcement if that construction has a reasonable basis. (*DHS, supra,* 17 Cal.App.4th at p. 495.) Such is the case here, and we are reluctant to interpret the disciplinary rules to give them the broad applicability requested, as applying to the type of transfer decisions and reassignments that occurred here. The Commission's jurisdiction is not so broad.

In conclusion, under the plain meaning of the language of rule VII, section 7.4, the personnel decisions that transferred the Officers to different assignments did not result in removal of the Officers from their positions. Nor was there a direct, discipline-related reduction in compensation that would

---

[5] Officers generally argue that a restriction on an ability to accrue overtime pay constitutes an appealable reduction in compensation. There is no substantial evidence challenge on appeal to the finding in the statement of decision that this restriction was not disciplinary in nature. The record includes an excerpt from a memorandum of agreement applicable to Officers, stating that there is no guarantee of overtime intended through the provisions in the agreement for calculating overtime payment rates. As such, it appears that overtime is subject to discretionary authorization and a restriction on its accrual, unless disciplinary in nature, does not trigger a hearing right under the disciplinary rules. Also, in the definition of "compensation" found in rule XVII, section 17.1.1 ("[a]ny salary, wage, fee, allowances, or all other forms of valuable consideration including benefits earned or paid to an employee by reason of service in a position"), no express reference is made to overtime. No reduction in compensation of the sort that will trigger a disciplinary hearing has been shown here.

implicate the hearing requirement of that rule. Our decision in *Head, supra*, 50 Cal.App.4th 240, does not require a different result, nor is there any need for further declaratory relief in the judgment that we affirm.

McDonald, J., and O'Rourke, J., concurred.