Filed 5/13/14  L.A. County Dept. of Children and  Family Services v. L.A. County Civil Service Commission CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>LOS ANGELES COUNTY CIVIL SERVICE COMMISSION,<br><br>      Defendant and Respondent;<br><br>SHANNON EBERLY,<br><br>      Real Party in Interest and      Respondent. | B249446<br><br>(Los Angeles County Super. Ct. No. BS137137) |

        APPEAL from a judgment of the Superior Court of Los Angeles, Joanne B. O'Donnell, Judge.  Affirmed.

        Shelden and Rivera and Mario R. Rivera for Plaintiff and Appellant.

        No appearance for Defendant and Respondent Los Angeles County Civil Service Commission.

Law Offices of Victor Manrique and Victor M. Manrique for Real Party in Interest and Respondent Shannon Eberly.

_____

After appellant County of Los Angeles, Department of Children and Family Services (DCFS) dismissed respondent Shannon Eberly for entering false information in appellant's computer system, the Civil Service Commission of the County of Los Angeles (Commission) set aside the dismissal and imposed a 20-day suspension on Eberly. On appeal, DCFS challenges the superior court's denial of its petition for a writ of mandate commanding the Commission to reinstate Eberly's discharge. We reject DCFS's contentions and affirm.

## RELEVANT FACTUAL AND PROCEDURAL
## BACKGROUND

In 2004, DCFS hired Eberly as a trainee Children's Social Worker (CSW). In January 2005, she became a permanent CSW. Her duties included conducting monthly face-to-face visits with the children assigned to her, assessing their placement, and recording information in DCFS's "CWS/CMS" computer system (CWS/CMS system). Prior to Eberly's discharge, her performance was evaluated as "[c]ompetent" and "[v]ery [g]ood," and she was never disciplined.

In November 2009, Eberly's supervisor became aware that Eberly's records in the CWS/CMS system misdescribed four visits with children. On April 2, 2010, DCFS issued Eberly a notice of its intent to discharge her. After a *Skelly* hearing was conducted regarding Eberly's discharge, she was assigned limited

duties while the hearing officer's recommendation was pending.[1]  In May 2010, there was a report that Eberly made an improper entry in the CWS/CMS system. DCFS amended the allegations against Eberly to include the incident, and a second *Skelly* hearing was conducted regarding it.

On June 25, 2010, DCFS discharged Eberly.  The DCFS's discharge letter stated that in November 2009, Eberly falsified records of four visits with children. According to the discharge letter, although Eberly's computer entries claimed that she had interviewed the children in their placements, she made no visit with one child, and saw the other children outside their placements.  DCFS maintained that Eberly's misconduct constituted violations of DCFS's discipline guidelines and the Los Angeles County Civil Service Rules.

Eberly appealed her discharge before the Commission, which referred the matter to a hearing officer.  On June 8, 2011, following an evidentiary hearing, the hearing officer submitted a report to the Commission containing proposed findings of fact, conclusions of law, and a recommendation regarding the appropriate discipline.  The hearing officer identified the selection of the disciplinary measure as the primary issue because Eberly "virtually" admitted the allegations against her.  Following an evaluation of Eberly's misconduct, the hearing officer concluded that it did not support the imposition of a discharge, and recommended instead that Eberly be suspended for 20 days.

The Commission initially proposed to accept the hearing officer's recommended decision.  Later, after DCFS submitted objections, the Commission proposed to reject the recommended decision and sustain Eberly's discharge.  On

---

[1]  In *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 203 (*Skelly*), the Supreme Court held that except in minor disciplinary matters, public employees are entitled to notice and an evidentiary hearing on disciplinary actions taken against them.

January 18, 2012, following a hearing, the Commission adopted as its final decision the hearing officer's proposed findings of fact, conclusions of law, and recommended disciplinary measure.

DCFS sought administrative mandamus before the superior court (Code Civ. Proc., § 1094.5). On March 20, 2103, the superior court denied DCFS's petition for writ of mandate, concluding that the hearing officer, in recommending a 20-day suspension in lieu of a discharge, neither erred as a matter of law nor engaged in an abuse of discretion. Judgment in favor of the Commission and against DCFS was entered on April 18, 2013. This appeal followed.

## DISCUSSION

DCFS challenges the superior court's denial of administrative mandamus, contending that Eberly's misconduct required a discharge. DCFS raises several challenges to the Commission's determination that the appropriate discipline for Eberly's misconduct was a 20-day suspension, rather than a discharge. DCFS argues that the determination reflects a misinterpretation of the applicable disciplinary guidelines and civil service rules, that it is not supported by sufficient evidence, and that it constituted an abuse of the Commission's discretion. As explained below, we disagree.

A. *Governing Principles*

The standards applicable to our review are determined by the fact that DCFS -- not Eberly -- filed the underlying petition for writ of mandate. When a public employee seeks administrative mandamus regarding a dismissal or suspension, the superior court "exercises its independent judgment upon the evidence" before the Commission, as dismissals and suspensions affect the

4

employee's "fundamental vested right" in employment. (*Melkonians v. Los Angeles County Civil Service Com.* (2009) 174 Cal.App.4th 1159, 1167-1168.) In contrast, when a public employer such as DCFS seeks administrative mandamus regarding the Commission's reduction of discipline imposed on an employee, the superior court reviews the Commission's factual findings for the existence of substantial evidence, as DCFS's right to manage and discipline its employees is not a fundamental vested right. (*County of Los Angeles v. Civil Service Com.* (1995) 39 Cal.App.4th 620, 633.) The superior court was thus required to apply the substantial evidence test to the Commission's decision. (*Ibid*.) In turn, "we review the administrative decision, not the superior court's decision, by the same standard." (*Ibid*.)

To the extent DCFS challenges the severity of the penalty that the Commission imposed on Eberly, we observe that the discretion to fix the penalty is vested solely in the administrative agency, and that neither the superior court nor an appellate court is free to substitute its discretion for that of the agency. (*Cummings v. Civil Service Com*. (1995) 40 Cal.App.4th 1643, 1652.) The superior court thus examines the administrative agency's decision for an abuse of discretion. (*Ibid*.) On appeal, we review the agency's decision under the same standard. (*Ibid*.) Because our review "gives no deference to the trial court's determination," it is de novo "vis-à-vis the trial court." (*Ibid*., italics deleted.)

Although we examine the Commission's choice of a penalty for an abuse of discretion, we independently interpret the applicable civil service rules and administrative guidelines. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8; *Department of Health Services v. Civil Service Com.* (1993) 17 Cal.App.4th 487, 494.) "The construction of county ordinances and rules is subject to the same standards applied to the judicial review of statutory

enactments.  In construing a legislative enactment, a court must ascertain the intent of the legislative body which enacted it so as to effectuate the purpose of the law." (*Id.* at p. 494.)[2]

### B. *Proceedings Before the Hearing Officer*

DCFS's contentions focus on the hearing officer's findings of fact and conclusions of law, as the Commission accepted those determinations in their entirety.  We therefore set forth the evidence presented to the hearing officer and his determinations.

### 1. *Allegations Regarding Misconduct*

Before the hearing officer, DCFS alleged that Eberly was subject to discipline because she contravened its guidelines governing contacts with placed children.  DCFS's procedural guide requires CSWs to conduct monthly meetings with children living in foster homes and record those contacts within three days in the CWS/CMS system.  To support Eberly's discharge for violation of those procedures, DCFS relied on a civil service rule and several DCFS disciplinary guidelines.

Rule 18.031 of the Los Angeles County Civil Service Rules (Civil Service Rule 18.031) (L.A. County Code of Ord., tit. 5, appen. 1) provides:  "Failure of an

---

[2]    We recognize that the superior court, in denying the petition for writ of mandate, believed it was obliged to apply its "independent judgment" to the Commission's factual findings.  However, as we review the court's ruling, not its reasoning (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15), we will affirm the ruling on any theory properly supported by the record (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1).  Because we conclude there was substantial evidence to support the Commission's findings, the superior court's application of a more stringent standard of review cannot be regarded as prejudicial.

employee to perform his or her assigned duties so as to meet fully explicitly stated or implied standards of performance may constitute adequate grounds for discharge, reduction or suspension." The rule further identifies grounds for discipline, including whether the employee has failed to "report information accurately and completely" or has engaged in conduct "unbecoming a county employee. . . ."[3]

Chapter 14.400 of the DCFS Personnel Manual authorizes ranges of sanctions for "1st offense[s]" in defined categories of misconduct. Under those guidelines, employees who withhold information from superiors or fail to maintain records may receive reprimands or suspensions (ch. 14.400, §§ A(15), F(3)); employees who do not follow established rules and regulations may receive a penalty ranging from a warning or reprimand to a discharge (ch. 14.400, §§ B(4), F(10)); and employees who engage in criminal, dishonest, or immoral conduct, or violate a professional ethical rule, may receive penalties ranging from a 15-day suspension to a discharge (ch. 14.400, §§ D(9), F(1)).

### 2. *Evidentiary Showings Before the Hearing Officer*

At the evidentiary hearing, Felicia Mitchell, Eberly's supervisor, testified that in November 2009, Eberly asked for vacation time during the Thanksgiving

---

[3]    Civil Service Rule 18.031 states: "Where appropriate, such grounds may include, but are not limited to, qualitative as well as quantitative elements of performance, such as failure to exercise sound judgment, failure to report information accurately and completely, failure to deal effectively with the public, and failure to make productive use of human, financial and other assigned resources. Grounds for discharge, reduction or suspension may also include any behavior or pattern of behavior which negatively affects an employee's productivity, or which is unbecoming a county employee; or any behavior or condition which impairs an employee's qualifications for his or her position or for continued county employment."

holidays. Mitchell was aware that Eberly had child care issues and her grandmother was ill. Mitchell told Eberly that if she did not intend to return to work before December, she had to complete her November duties prior to taking a vacation.

Mitchell further testified that during November 2009, Eberly told her that she planned to visit a specific child on November 13. On that date, Eberly phoned Mitchell and discussed the visit as if it had taken place. The following day, Mitchell received a phone call from the child's caregiver, who said Eberly had not appeared for the visit. Mitchell examined Eberly's entries in the CWS/CMS system, and found no information regarding the visit.

When Mitchell questioned Eberly regarding their phone conversation, Eberly acknowledged that she did not make the planned visit, but stated that Mitchell had misunderstood her remarks, which she maintained were intended to describe a visit with a different child. Mitchell cautioned Eberly not to enter false information in the CWS/CMS system regarding the missed visit, and initiated an audit of Eberly's CWS/CMS entries for November 2009. In late November, Mitchell learned that Eberly's CWS/CMS entries contained false statements regarding four visits. The entries reflected a purported November 18 visit with a child named "Albert" that did not take place, and otherwise misreported the locations of visits with three other children on November 5, 13, and 18.

Mitchell further testified that in May 2010, after Eberly was placed on limited duties, Eberly directly entered some information in the CWS/CMS system. According to Mitchell, although Eberly was permitted to arrange for a unit clerk to input the information, it was improper for her to enter it herself.

Eberly testified as follows: She was ordinarily responsible for 25 to 34 cases. In early November 2009, she learned that her grandmother had cancer. In

8

addition, her husband, who had been acting as caregiver for their children, received notice that he was to undertake two weeks of job training in late November. When Eberly asked Mitchell for time off during the week of Thanksgiving Mitchell replied that Eberly would be permitted to take the time off only if she completed all her November visits by November 20, and documented them in the CWS/CMS system.

According to Eberly, that requirement compelled her to spend considerable time out of her office making visits. "[F]or the first time" as a CSW, she created entries for visits in the CWS/CMS system in advance of them, with the intention of modifying the entries, if necessary, following the visits. Her plan was to transmit new information by e-mail to Cindy Torres, her unit clerk. Eberly stated: "I was in a time crunch to get my visits done and the information inputted in[to] the system, so I tried to save myself a step, which I . . . realize is a mistake." Eberly acknowledged that her use of pre-visit entries was not "best practice," but denied that she intended to deceive anyone.

Eberly further testified that she failed to correct the errors in the pre-visit entries through oversights. On November 18, 2009, when she arrived at Albert's placement for a pre-arranged visit, neither he nor his caregiver was present. To reschedule the meeting, she phoned the caregiver, who was unable to commit to a new date for a visit because Albert was ill. Through an oversight, Eberly failed to correct her CWS/CMS system entry for the visit. Regarding the remaining three children, Eberly testified that she saw them outside their placements. Although she made changes to her pre-visit entries after seeing the children, she mistakenly failed to amend the meeting place identified in the entries.

Eberly further testified that she was unaware of any problem regarding her entries until December 29, 2009, when Albert's caregiver told Eberly that

9

someone from DCFS had contacted her regarding Eberly's November visits, and reminded Eberly that she never rescheduled the November 18, 2009 visit. When Eberly realized that she had failed to carry out a November visit with Albert, she discussed the issue with Mitchell, who asked her to complete a "missed child contact form," but mentioned no investigation into Eberly's entries.

Later, after discovering the investigation, Eberly sent a memorandum to Roxanna Flores-Aguilar, a DCFS assistant regional manager. In the memorandum, dated February 19, 2010, Eberly stated that she created an entry for the scheduled November 18, 2009 visit with Albert before it occurred because she was planning to take some time off, and needed to complete her visits. Eberly further stated that she lacked a good explanation for the other erroneous entries, but believed they were due to a "mistake." Eberly denied that she "intentionally or maliciously falsif[ied] a contact."

During the hearing, Eberly also denied that she phoned Mitchell on November 13, 2009, to discuss a visit she never made. According to Eberly, on that date, she learned that her own daughter was ill, and contacted the pertinent child's caregiver to cancel the scheduled visit. When the caregiver became irate, Eberly phoned Mitchell to report the incident, and told her that she intended to go home to care for her daughter.

Eberly further testified that in May 2010, after she was assigned limited duties, her caseload was distributed to other CSWs. While "cleaning out" cases unrelated to her inaccurate CWS/CMS system entries, she discovered some information that had not been entered into the CWS/CMS system. By e-mail, Eberly forwarded the additional information to Torres for entry into the CWS/CMS system. When Torres became confused regarding the information, Eberly walked to her desk and made the entries herself, while Torres was present.

10

According to Eberly, her assignment to limited duties did not bar that conduct.[4]

### 3. *Hearing Officer's Proposed Decision*

Following the presentation of evidence, the hearing officer issued a 15-page proposed decision containing factual findings and conclusions of law. The officer gave primary attention to the four CWS/CMS system entries cited in the DCFS's discharge letter. The officer found that the four entries contained falsehoods, as one reported a visit with a child whom Eberly never saw in November, and the others misidentified the locations of Eberly's visits. According to the officer, Eberly did not intend to deceive her superiors, concluding that "[s]he began her entries on case notes prior to conducting the home visits and intended to correct [them] after making the visits[,] but failed to do so due to admitted forgetfulness." The officer further stated that Eberly "put the entries into the computer prior to visiting the children because she felt pressure to finish her work prior to taking vacation leave to deal with family matters."

Although the DCFS's discharge letter mentioned the May 2010 incident without identifying it as a basis for Eberly's discharge, the hearing officer examined the incident and concluded that it was "de minimus." According to the officer, the evidence showed only that after Eberly asked Torres to input some old contact information into the CWS/CMS system, Eberly entered it herself when

---

[4] Several other witnesses also testified during the evidentiary hearing. Roxanna Flores-Aguilar testified that in March 2010, she assigned Eberly to limited duties. Art Lieras, the officer who conducted Eberly's *Skelly* hearings, testified that he recommended that she be discharged. Lynne Condon, a DCFS employee relations manager, testified that she assisted in the preparation of DCFS's discharge letter regarding Eberly. She opined that a discharge was the proper penalty for Eberly's misconduct. Condon also testified that Lieras recommended a 30-day suspension for Eberly.

Torres became confused. The officer determined that Eberly's conduct did not constitute "a disciplinable incident."

Following a discussion of DCFS's disciplinary guidelines, the hearing officer determined that "[s]uspension under progressive discipline," rather than a discharge, was the appropriate discipline for the four pre-visit entries, noting that Eberly had no prior record of discipline, that her misconduct did not harm the children, and that she did not intend to deceive her superiors. The officer proposed the following conclusions of law: "1. [Eberly's] conduct . . . violated [the DCFS disciplinary guidelines cited by DCFS]. [¶] 2. [Eberly's] conduct violated Civil Service Rule 18.031. [¶] 3. The allegations of the Letter of Discharge are true. [¶] 4. The appropriate remedy is reinstatement of [Eberly] to her position as CSW [], 20 days suspension, and reimbursement for salary and benefits for the time since her discharge[,] minus the [20] days suspension time."

C. *No Errors in Interpreting the DCFS Disciplinary Guidelines*

DCFS contends that the Commission, in adopting the hearing officer's proposed decision, erroneously interpreted the DCFS disciplinary guidelines to "require that progressive discipline be imposed before discharge could be effected." We disagree.

At outset, we observe that the hearing officer did not conclude that the DCFS disciplinary guidelines *required* the imposition of progressive discipline. Rather, the officer determined that under those guidelines, "[d]iscipl[ine] is generally progressive unless the offense is so egregious that discharge without any other prior record [of misconduct] is appropriate." Furthermore, the officer determined that although Eberly's conduct might be characterized as "dishonest," it did not rise to egregious behavior warranting a dismissal under the guidelines, in

12

view of her lack of an intention to deceive her superiors and the absence of harm to the children.  As explained below, we see no error in those conclusions, insofar as they reflect interpretations of the governing rules and disciplinary guidelines.

In construing civil service rules and administrative guidelines, we look first to their language, "attempting to give effect to the usual, ordinary import of the language and seeking to avoid making any language mere surplusage." (*Department of Health Services v. Civil Service Com.*, *supra*, 17 Cal.App.4th at p. 494.)  If the language is ambiguous, we may give some weight to established administrative interpretations of the rule or guideline.  (*Id*. at p. 495.)  In contrast, if there is no ambiguity, we derive the intent underlying the rule or guideline "'from the plain meaning of the language itself.'"  (*Head v. Civil Service Com.* (1996) 50 Cal.App.4th 240, 244 quoting *Botello v. Shell Oil Co.* (1991) 229 Cal.App.3d 1130, 1135.)

Because Civil Service Rule 18.031 mandates no specific sanction in any given set of circumstances, we focus on the DCFS disciplinary guidelines.  As noted above (see pt. B.1., *ante*), Chapter 14.400 of the DCFS Personnel Manual identifies several types of discipline for the misconduct alleged against Eberly, including a discharge, but does not mandate the imposition of a discharge.  Indeed, the prefatory paragraph of that chapter states:  "The list of disciplinary actions is intended as a guide only, and should not be applied 'Automatically' in relation to actual infractions. . . .  All the circumstances surrounding a particular offense must necessarily be considered."  Chapter 14.101 of the DCFS Personnel Manual further states:  "Generally, discipline will follow a 'progressive-step method.' This method attempts to correct . . . the employee's . . . misconduct at the mildest, most effective level.  It should be imposed when the manager can reasonably anticipate that the discipline will be effective."  (Underlining deleted.)

Exceptions to the "progressive-step" method are specified in Chapter 14.102 of the DCFS Personnel Manual (Chapter 14.102), which states: "There are some acts of misconduct which by their nature are not appropriate for progressive discipline. These acts [are] ones which the employee should have reasonably known to be unacceptable, without specific notice from [DCFS], or which are generally socially unacceptable. [¶] Such behavior includes, but is not limited to, dishonesty, theft, violent or disruptive behavior, insubordinate behavior, or behavior which is illegal or places [DCFS] in violation of [f]ederal law, [s]tate law, . . . local ordinance[s], or court orders. Behavior of this type should be disciplined by suspension, or[], if warranted, discharge on the first occurrence."

The DCFS disciplinary guidelines, by their plain language, support the hearing officer's conclusion that DCFS discipline is ordinarily progressive, absent "egregious" misconduct. Similarly, the language of Chapter 14.102 substantiates the officer's conclusion that absent a prior record of discipline, a discharge is warranted only for certain types of grave misconduct. Generally, under the principle of *expressio unius est exclusio alterius*, the listing of items in a rule establishes the types of items outside the scope of the rule. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13.) Because the misconduct enumerated in Chapter 14.102 is intentional, injurious, or manifestly wrong, judged by social or legal standards, the officer reasonably determined that Eberly's mistaken but ultimately harmless entries did not constitute egregious misconduct warranting a discharge under the disciplinary guidelines.

In so concluding, we do not condone Eberly's misconduct or minimize its significance. We agree with the superior court that her behavior carried a disturbing potential for serious harm to the children for whom she was

14

responsible. As elaborated below (see pts. D. & E., *post*), we find only that the Commission did not abuse its discretion in imposing a suspension as discipline for the misconduct.

### D. *No Error in Factual Findings*

DCFS contends that the Commission erred in finding that Eberly lacked the intention to deceive when she entered the false information in the CWS/CMS system. As noted above, the Commission adopted the hearing officer's findings that Eberly made the pre-visit entries in order to secure time off "to deal with family matters," and that she failed to correct them "due to admitted forgetfulness." For the reasons discussed below, we reject DCFS's contention.

In reviewing the Commission's factual findings, we examine the record for the existence of substantial evidence to support them. Generally, factual findings are examined for the existence of substantial evidence. (*Shupe v. Nelson* (1967) 254 Cal.App.2d 693, 700.) On review for substantial evidence, "'[c]onflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the [trier of fact] . . . to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'" (*Daly v. Wallace* (1965) 234 Cal.App.2d 689, 692, emphasis omitted, quoting *People v. Huston* (1943) 21 Cal.2d 690, 693.)[5]

---

[5] Upon review for substantial evidence, we do not reweigh the evidence. (*In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1650.) Rather, "the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trier of fact], and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the [trier of fact]." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, italics deleted.)

15

Here, there is sufficient evidence to support the Commission's findings. Before the hearing officer, Eberly testified that she made the pre-visit entries because she needed time off to resolve family matters, and that she planned to correct inaccuracies in the entries after the visits, but mistakenly failed to do so. That testimony is adequate to sustain the Commission's finding.

DCFS contends Eberly's testimony was conclusively discredited by other evidence, including evidence from Eberly herself. DCFS maintains that the four November 2009 entries were "so specific and detailed that it is not possible that [they] could have been entered in error." DCFS also argues that Eberly's professed reasons for the entries -- namely, her grandmother's illness and her husband's job training -- were not credible, as she never mentioned them in her February 19, 2010 memorandum to Flores-Aguilar, and submitted no documentary evidence corroborating their existence.[6]

In addition, DCFS contends that Eberly gave shifting testimony regarding her reasons for the entries. Eberly initially testified that she needed time off during Thanksgiving week because her grandmother's chemotherapy began that week, as did her husband's job training. She also stated that both considerations motivated all four of her entries, the earliest of which concerned a visit on November 5, 2009. She later acknowledged that her husband's job training did not motivate the earliest entry. According to Eberly, although she was aware that her husband was to undergo training, she learned its starting date -- namely, November 23, 2009 -- only "[t]wo days" before it began.

---

[6] In a related contention, DCFS argues that Eberly did not cite the purported reasons during her *Skelly* hearings. However, that contention relies on matters beyond the proper scope of our review, as no transcripts of the *Skelly* hearings were submitted to the Commission or its designated hearing officer.

16

The evidence upon which DCFS relies did not conclusively discredit Eberly's testimony. As our Supreme Court explained in *Clemmer v. Hartford Ins. Co.* (1978) 22 Cal.3d 865, 878, even internally inconsistent testimony from a single witness may support a judgment. "It is for the trier of fact to consider internal inconsistencies in testimony, to resolve them if this is possible, and to determine what weight should be given to such testimony." (*Ibid.*) Furthermore, "[t]he testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions. [Citations.]" (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 366.) We reject the statements of a witness that the factfinder has believed only if they are "inherently improbable," that is, "physically impossible or obviously false without resorting to inference or deduction." (*Watson v. Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1293; see *Daly v. Wallace*, *supra*, 234 Cal.App.2d at p. 692.) While a trier of fact might well have been skeptical of Eberly's explanations, Eberly's testimony was neither physically impossible nor obviously false on its face.

We recognize that DCFS is understandably and appropriately concerned regarding Eberly's honesty, as she is charged with the care of children. However, although a trier of fact could have rejected her testimony, the hearing officer and the Commission did not do so. As explained above, under the standard governing our review, there is sufficient evidence to support the Commission's finding that Eberly lacked the intent to deceive.[7]

---

[7] DCFS's reply brief contends that Eberly's testimony regarding her "family issues" conclusively shows that they motivated none of her inaccurate entries. DCFS argues that Eberly became aware of her grandmother's cancer and her husband's job training at the same time. DCFS further argues that Eberly first learned the training's starting date "two days" before it began on November 23. Because Eberly's inaccurate entries were made

*(Fn. continued on next page.)*

17

E. *No Abuse of Discretion in Imposing Suspension*

DCFS contends the Commission abused its discretion in reducing the discipline imposed on Eberly to a 20-day suspension.  As explained below, we disagree.

In reviewing the Commission's exercise of its discretion, "we bear in mind the principle [that] '[c]ourts should let administrative boards and officers work out their problems with as little judicial interference as possible. . . .  Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere.'  [Citations.]" (*Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 230.)  Under this standard, "[i]f reasonable minds may differ with regard to the appropriate disciplinary action, there is no abuse of discretion." (*Lowe v. Civil Service Com.* (1985) 164 Cal.App.3d 667, 677.)  Generally, in the context of public employee discipline, "the overriding consideration" regarding an abuse of discretion "is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[harm] to the public service.'  [Citations.]  Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence.  [Citation.]" (*Skelly, supra,*15 Cal.3d at p. 218.)

Here, the Commission adopted the hearing officer's conclusion that "[s]uspension under progressive discipline [was] appropriate in the circumstances."  As noted above (see pts. C. & D., *ante*), the pertinent disciplinary

---

on or before November 18, DCFS maintains that they necessarily preceded Eberly's "family issues."

Eberly's testimony compels no such conclusion.  She testified that she first became aware of her grandmother's cancer at the "beginning of November 2009," and that she was aware of her husband's impending training before she learned its starting date.  Furthermore, she conceded only that the training did not motivate her November 5 entry.  The record thus does not establish that the hearing officer erred in attributing Eberly's

*(Fn. continued on next page.)*

18

guidelines permit the imposition of a suspension in the absence of egregious misconduct, and there was substantial evidence to support the factual finding that Eberly acted without an intent to deceive. Furthermore, the record discloses sufficient evidence to support the factual determinations that Eberly had no prior record of discipline, that she was "a good productive employee," and that her misconduct caused no harm to the children under her care. In view of Chapter 14.400 of the DCFS Personnel Manual, which authorizes the imposition of discipline at the "mildest, most effective level" likely to correct performance, we see no abuse of discretion in the Commission's decision to impose a 20-day suspension.

DCFS challenges that decision on several grounds, which we discuss below.

### 1. *No Deference to DCFS's Decision to Discharge*

DCFS contends the Commission failed to give due weight to DCFS's own decision to discharge Eberly. However, nothing before us suggests that the Commission was obliged to give substantial deference to DCFS's decision.

In *Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 1150, a sheriff maintained on appeal that the pertinent commission was required to review his findings related to a disciplinary decision for the existence of substantial evidence, rather than making its own findings. The appellate court rejected that contention, noting that neither the statutory scheme applicable to civil service commissions nor the governing county charter specified the commission's standard of review of the sheriff's findings. (*Id*. at pp. 1156-1157.) The court concluded that "the [c]ommission should independently review

entries to "family matters."

the facts and law, and the [s]heriff's findings and final disciplinary order are not due substantial deference." (*Id*. at p. 1157.)

We reach a similar conclusion here, as DCFS has identified no statute or rule obliging the Commission to defer to its decisions. Furthermore, the Los Angeles County Civil Service Rules authorize the Commission to conduct evidentiary hearings (rules 4.06, 4.07), and provide that "[i]n hearings on discharges, reductions or suspensions in excess of five days, the burden of proof shall be *on the appointing power*, except that the burden of proving affirmative defenses shall be on the person asserting them" (rule 4.12, italics added). In view of these rules, DCFS's contention fails.

### 2. *Adequate Basis for Suspension*

DCFS contends that the Commission's decision cannot be reconciled with its conclusion that Eberly engaged in the misconduct alleged in the letter of discharge, pointing to *Hankla v. Long Beach Civil Service Com.* (1995) 34 Cal.App.4th 1216 (*Hankla*). There, an off-duty police officer became involved in a heated verbal dispute following a minor driving incident and fired a gun, thereby wounding the other participant in the dispute. (*Id*. at pp. 1218-1222.) Following an investigation, the officer's employer discharged him, concluding, inter alia, that he unnecessarily involved himself in the verbal dispute, and "intentionally and without justification" fired his gun and caused a serious wound. (*Ibid*.) Although the civil service commission found that the officer had engaged in that misconduct, it reduced his discipline to a suspension. (*Id*. at p. 1222.) The appellate court held that the reduction was an abuse of discretion because it "manifest[ed] an indifference to public safety and welfare." (*Id*. at pp. 1222-1226.)

20

No such indifference is shown here, as Eberly's misconduct was not of the same magnitude as that displayed in *Hankla*. Although the Commission concluded that she engaged in the misconduct alleged against her, it also found the existence of significant mitigating circumstances warranting the imposition of a suspension. In view of those findings, the Commission's decision does not constitute an abuse of discretion.[8]

DCFS also maintains that the Commission's ruling, as reflected in the hearing officer's 15-page proposed decision, does not properly articulate the connection between the evidence and the Commission's imposition of a suspension. We disagree. Agencies rendering decisions subject to administrative mandamus are obliged to "set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515; Code Civ. Proc., § 1094.5.) Those findings are sufficient when "they apprise the interested parties and the courts of the basis for administrative action." (*Gaenslen v. Board of Directors* (1985) 185 Cal.App.3d 563, 573.) That is the case here.[9]

---

[8]     DCFS suggests that the Commission gave insufficient weight to the May 2010 incident, arguing that her conduct "was a direct violation of verbal and written instructions" regarding her limited duties. However, as the hearing officer noted, that incident was not identified as a basis for Eberly's termination. Furthermore, the evidence before the officer showed that Eberly was permitted to have Torres enter the pertinent information, and that she entered it herself while Torres was present. We see no error in the Commission's conclusion that Eberly's misconduct was "de minimus."

[9]     In a related contention, DCFS suggests that the hearing officer's report contains contradictory findings. DCFS notes that although the officer expressly found Eberly did not visit Albert in November 2009, in recommending a suspension, the officer stated that "there was no harm [from the inaccurate entries] and all the children were seen by [Eberly] . . . ." However, as the latter remark occurred within a discussion of harm to the children, it is reasonably understood to mean that Eberly saw Albert, albeit *after* the missed November visit.

*(Fn. continued on next page.)*

21

### 3. *No Improper Reliance on Evidence Outside the Record*

DCFS contends the Commission's decision was improperly influenced by materials not admitted into evidence before the hearing officer. While considering the hearing officer's proposed decision, the Commission denied Eberly's request for judicial notice of items not submitted to the hearing officer, including portions of the Los Angeles County's policy regarding the Family Medical Leave Act (29 U.S.C. § 2601 et seq.) (FMLA). Under that policy, when an employer becomes aware that an employee requires a leave for reasons falling under the FMLA, the employer must direct the employee's attention to the possibility of a FMLA leave. DCFS argues that the Commission, in adopting the proposed decision, incorrectly relied on the FMLA policy. As explained below, we reject that contention.

### a. *Governing Principles*

The Commission's decision is subject to "a strong presumption that official duty has been regularly performed." (*Schneider v. Civil Service Com.* (1955) 137 Cal.App.2d 277, 284; Evid. Code, § 664.) The presumption is rebuttable, as "its effect is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." (*Gee v. California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 718; Evid. Code, § 606.) Thus, the presumption may be dispelled only when the record affirmatively shows that an administrative

---

Although Eberly was never asked whether she visited with Albert after the missed visit, the record supports the inference that she did so. Eberly testified that her practice was to see Albert at least once a month; that on December 29, 2009, when she discovered the missed November visit, she sought Mitchell's help because she had never before failed to make a monthly child contact; and that she was responsible for her assigned cases until April 2010, when she was placed on "desk duty." In view of this evidence, the hearing officer could reasonably conclude that Eberly made monthly visits with Albert after the missed November visit.

body failed to apply the requisite standards. (See *Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 132; *Noguchi v. Civil Service Com.* (1986) 187 Cal.App.3d 1521, 1537-1538.)

### b. *Underlying Proceedings*

Although the full FMLA policy was not admitted into evidence before the hearing officer, the parties offered testimony referring to the policy. Mitchell testified that when Eberly sought time off, she made a vacation request, not a request for leave under the FMLA. Eberly testified: "At the time [of the request,] I didn't think about FMLA. . . . I don't know all the ramifications of that, all the details of . . . how to get that time off."

Following the presentation of evidence, Eberly contended that "[a]t no time did [Mitchell] offer leave pursuant to the [FMLA], [but] instead improperly conditioned [Eberly's] time off approval on expediting the completion of caseload tasks, thereby contributing to the rush in [Eberly's] work." Although the hearing officer's proposed decision noted that contention, it contained no finding regarding a violation of the FMLA policy. The hearing officer concluded only that Eberly made the four pre-visit entries "because she felt pressure to finish her work prior to taking vacation leave to deal with family matters."

Later, when the Commission proposed to sustain Eberly's discharge, Eberly asked the Commission to take judicial notice of the FMLA policy, insofar as it imposed a duty on employers to offer FMLA leaves, as well as several disciplinary decisions by the Commission. On January 18, 2012, at the hearing on the Commission's proposal to sustain Eberly's discharge, the Commission denied Eberly's requests for judicial notice. Following that ruling, DCFS counsel argued that the evidence before the hearing officer was "very clear" that although Eberly

23

was aware of the FMLA policy, she made only a vacation request.  He further argued that the evidence established "no FMLA violation."  Eberly's counsel responded that he did not ask the Commission to find a FMLA violation, and instead urged the Commission to find "as a mitigating circumstance that [Eberly] was sped up in order to get the time [off]."

After the parties' counsel completed their arguments, the Commission discussed a motion to adopt the hearing officer's proposed decision.  In support of the motion, Commissioner Lynn Adkins stated:  "I'm not condoning what [Eberly] did. . . .  But *even without the FMLA*, the [h]earing [o]fficer came down with a 20-day suspension.  And I'm wondering, where is management?  [¶] . . . Where is management, to take an employee and say . . . you've got FMLA here, you're obviously distraught, I'm going to put a little more pressure on you to do something, and that . . . bothers me."  (Italics added.)  Soon afterward, the Commission decided to adopt the hearing officer's proposed decision.

### c. *Analysis*

DCFS maintains that Commissioner Adkins's remarks necessarily reflect a reliance on the provision of the FMLA policy excluded under the Commission's ruling.  We disagree.  That ruling did not preclude Commissioner Adkins from making references to the FMLA.  Before the Commission, there was no dispute that the evidence submitted to the hearing officer established the existence of the FMLA policy, which provides for leaves in some circumstances.  The Commission's ruling merely barred consideration of a specific aspect of that policy, namely, the employer's duty to inform employees of their right to a FMLA leave.

Nor are Commissioner Adkins's remarks reasonably understood to assert a violation of that duty.  In supporting the motion to adopt the hearing officer's recommended decision, Commissioner Adkins expressly noted that the hearing officer made no finding regarding a FMLA violation.  Viewed in context, Commission Adkins's remarks appear merely to chide "management" for applying "a little more pressure" to a "distraught" employee, without even exploring the possibility of a FMLA leave.  Accordingly, DCFS has failed to rebut the presumption that the Commission complied with its official duties.  (See *People v. Belmontes* (1988) 45 Cal.3d 744, 816, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [viewed in context, trial court's apparently improper remark reflected no disregard of governing law, and thus failed to overcome presumption that official duties were performed].)  In sum, the Commission did not abuse its discretion in imposing a suspension on Eberly.

## DISPOSITION

The judgment is affirmed. Eberly is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

WILLHITE, Acting P. J.

EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.