Filed 12/16/14  Marschke v. Sacramento County Civil Service Commission CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| STEVEN MARSCHKE, as Successor in Interest etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SACRAMENTO COUNTY CIVIL SERVICE COMMISSION, <br><br> Defendant; <br><br> COUNTY OF SACRAMENTO, <br><br> Real Party in Interest and Respondent. | C072579 <br><br> (Super. Ct. No. 34201080000559CUWMGDS) |

The sole question of law presented in this appeal is whether an employee who delayed her start date with the County of Sacramento to accommodate her personal vacation began her six-month probationary period when she signed the paperwork before she left on vacation or when she first reported to work.  Appellant argues that under the relevant county ordinances and civil service rules, the employee was appointed to the

1

position when she accepted the county's offer of employment, and her probation began on the date of her appointment. The county contends that because the relevant civil service rule and the county code define probationary period as the "period of continuous service following appointment," the period could not have begun until she returned from vacation and actually began a "period of continuous service," i.e., began to work. Applying all the venerable principles of statutory construction urged by appellant, we nonetheless agree with the county, the hearing officer, and the trial court that the probationary period did not start until the employee reported for her first day of work. We therefore affirm the trial court's denial of the petition for a writ of mandamus.

## I

## THE LAW

Because the facts are undisputed and the only question on appeal is a question of law, we begin with the pertinent county ordinances and civil service rules. We present the relevant law, cognizant of the principles of statutory construction requiring us to turn first to the plain meaning of the words themselves and to interpret their meaning in the context of the entire statutory or regulatory framework of which they are a part. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715; *Department of Health Services v. Civil Service Com.* (1993) 17 Cal.App.4th 487, 494-496.) As appellant politely reminds us, we are not at liberty to rewrite the ordinances or rules by adding words, terms, or conditions. (*City of Sacramento v. Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 793-794.) We conduct a de novo review of the legal issue before us. (*Dobbins v. San Diego County Civil Service Com.* (1999) 75 Cal.App.4th 125, 128-129.)

No one disputes that a Sacramento County employee is subject to a minimum six-month probationary period and during that period can be terminated without cause. The purpose of the probation is described in County of Sacramento Civil Service Commission

2

Rules, rule 8.2 as follows:[1]  "The probationary period shall be regarded as a part of the testing process and shall be utilized for observing closely the employee's work, for securing the most effective adjustment of a new employee to his or her position, and for releasing any probationer whose performance does not meet the required standards of work."

As alluded to in our opening paragraph, our central task is to construe the meaning of the county ordinance and civil service rule that define the probationary period.  The Sacramento County Code and the rules define the probationary period as follows:  "[T]he period of continuous service following appointment from an eligible list to a class in the civil service and prior to obtaining permanent status in the class."  (Sac. County Code, ch. 2.78, § 2.78.264; see rule 15.36.)

An employee who does not show up for work as agreed is deemed to have "declined the appointment."  (Rule 7.4, subd. (a).)  Rule 8.5, subdivision A allows for possible extensions of the probationary period:  "When an employee with probationary status is authorized paid leave, a leave of absence without pay, or a combination of paid leave and leave of absence without pay of more than 30 consecutive calendar days, the probationary period shall be extended for that employee by the number of consecutive calendar days of such absence that are in excess of 30 days."

Appellant focuses our attention on the definition of "appointment" since that key word is used within the definition of probationary period.  The rules and the Sacramento County Code define "appointment" as "[t]he offer to a person and his or her acceptance of a position in employment."  (Rule 15.6; see Sac. County Code, ch. 2.78, § 2.78.208.)  In appellant's view, the employee was appointed no later than the date she signed all the

---

[1]  Further references to rules are to the County of Sacramento Civil Service Commission Rules.

3

paperwork accepting the county's offer of a position in employment, and it was that date when her probationary period began.

## II

## THE UNDISPUTED FACTS

On September 25, 2007, Sacramento County conditionally offered Cynthia Seaman a job as an airport economic development specialist, subject to her passing a preemployment medical examination and a criminal background check. She subsequently satisfied those conditions.

On October 9, 2007, she completed all necessary paperwork, including a document entitled "County of Sacramento Employee Statement," which included the following language: "I hereby accept appointment of Sacramento County service subject to the conditions contained on this form and certify that the above is my true ethnic identity." She also signed a "New Employee Masterfile" containing a box for the "Effective 'From' Date." She did not begin work on October 9. The date subsequently entered on the New Employee Masterfile as the effective "from" date was October 24, 2007.

Seaman requested a start date of October 24, 2007, to accommodate her previously scheduled vacation. Thus, the effective date on her masterfile was consistent with her request for a delayed start date. She reported to work on that day.

Seaman points out that her first evaluation, in December 2007, was quite positive; in April 2008 her supervisor assured her that she had successfully completed her probationary period. She was shocked to be released after she believed her probationary period was over. Neither her evaluations, the assurances she received, nor her subjective beliefs are relevant to our determination, as a matter of law, as to when her probationary period began.

Seaman was released from her probationary status or, in other words, terminated on April 15, 2008. Thus, if the probationary period began on the day she started working,

4

or October 24, 2007, she could be terminated without cause. If, however, as she contends, the probationary period began on October 9, when she accepted the appointment and signed the necessary paperwork, then she argues the county did not comply with the procedural requirements necessary to fire her. She insists she was appointed on October 9, 2007, and on that date her probationary period commenced. The county, on the other hand, contends that she did not commence continuous service until October 24, 2007, and therefore her probationary period did not begin until she reported to work on that date.

Seaman filed and lost an administrative appeal on the grounds that she was not a probationary employee at the time she was fired and was the victim of age discrimination. She thereafter filed a petition for a writ of mandamus, challenging only the finding that her probationary period commenced on the day she started working for the county. In the petition, she sought reinstatement with full back pay and benefits, plus interest thereon. The trial court denied the petition, agreeing with the hearing officer that her "appointment" was not complete, and her probationary period accordingly did not begin to run, until she actually started work on October 24, 2007. She appealed.

Seaman died a year after the petition was denied, while her appeal was pending. We granted the request of her husband, Steven Marschke, to be substituted as her successor in interest.

### III

### DISCUSSION

For appellant, the case begins and ends with when his wife was appointed. Relying on the definition of appointment, he insists she accepted the county's offer of employment no later than the day she signed her paperwork, that is, on October 9, 2007. Because neither the civil service rules nor county ordinances state that the probationary period begins on the first day of work, he argues we cannot add a condition not found in the express language defining the probationary period. As a result, appellant's position is

5

that the probationary period began to run on the day she was appointed, not on the day she started working for the county.

We agree with appellant on all of the fundamentals. We will scrupulously adhere to the rules of statutory construction and will not add terms that were omitted or deviate from the plain meaning of the words used in the pertinent rules and ordinances. (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818; *Western/California, Ltd. v. Dry Creek Joint Elementary School Dist.* (1996) 50 Cal.App.4th 1461, 1488.) We need not, as appellant persuasively argues, place any weight on the county's historical interpretation of the rules and ordinances. Nevertheless, we disagree with appellant's construction of the meaning of the dispositive language.

The resolution of this case turns not on the meaning of "appointment," but on the meaning of the probationary period. According to Sacramento County Code, chapter 2.78, section 2.78.264 and rule 15.36, the probationary period is the "period of continuous service following appointment." Appellant's exclusive focus on the definition of "appointment" ignores the other two more important descriptors, "continuous service" and "following." These descriptors, in our view, undermine appellant's reliance on "appointment" as the trigger for the probationary period. Continuous service implies that the employee has started to work, thereby performing service for the county. This reading is consistent with the purpose of the probationary period—to allow the county to closely observe the employee's performance for a full six months and to have ample time to release her if her performance does not meet the required standards for the job. (Rule 8.2.)

Appellant proposes a clever way around the plain meaning of "continuous service" by suggesting that it is synonymous with "continuous employment" under unrelated Sacramento County Code, chapter 2.78, section 2.78.224 and rule 8.5, subdivision A. Pursuant to these provisions, continuous employment is defined as "[e]mployment uninterrupted from the date of appointment, except by authorized absence." (Sac. County

6

Code, ch. 2.78, § 2.78.224; rule 8.5, subd. A.)  Appellant urges us to first conclude that continuous service is interchangeable with continuous employment and then to make the leap that continuous service, like continuous employment, begins on the date of appointment.  Next, appellant would have us conclude that Seaman's vacation, despite the delayed start date, actually constituted an authorized absence, and because it did not exceed 30 days, it did not extend her probationary period.  (Rule 8.5, subd. A.)  To apply appellant's logic would require us to violate the very principles of statutory construction to which, he insists, we must adhere.

Appellant scolds the trial court for rewriting the pertinent provisions but asks us to do the same.  We must assume that the choice of words has meaning and if the law- and rule-making bodies intended the same meaning they would have used the same terminology.  Indeed, the use of the word "service" rather than "employment" distances the probationary period from the date of appointment.  An employee might have been employed when appointed and yet the probationary period did not commence until, as the law- and rule-making bodies clearly state, the employee's "continuous service" began.  We therefore reject appellant's argument that employment means service and the terms are interchangeable.  Rather, we hold that by choosing the very different term "service" rather than "employment," the law- and rule-making bodies divorced service from the date an employee was merely appointed to the more appropriate time to begin the probationary period, and that is when service actually commences.

The hearing officer and the court both found the appointment was not finalized until Seaman reported for work on October 24, 2007.  They relied in part on rule 7.4, subdivision (a)'s provision that if an eligible person fails to present herself for duty at the agreed-upon time and place, she will "be deemed to have declined the appointment."  Thus, they concluded an eligible person was not appointed until he or she reported to work.

7

While this analysis makes sense and construes the meaning of the probationary period within the statutory or regulatory framework of which it is a part, the key to understanding the meaning of probationary period is applying the requirement of "continuous service." Moreover, probationary period is defined as the period of continuous service "following" appointment, which to us means anytime after the appointment. So whether or not Seaman was appointed on October 9 when she signed the paperwork or on October 24 when she reported to work, her probationary period began on October 24 when she began her continuous service for the county by reporting to work.

Not only is this interpretation consistent with the entire statutory or regulatory scheme, but it is also consistent with the paperwork itself, in which Seaman's effective date was noted as October 24, 2007. The trial court found as a matter of fact that Seaman understood and agreed that her start date would be on October 24 and there was no evidence of any discussions or agreement between Seaman and her employer that her probationary period would begin on October 9, over two weeks before she actually started to work. Because we have concluded that the plain language of the ordinance and the civil service rule, taken in the context of the legal framework of which it is a part, means that the probationary period begins when the employee begins work, we need not consider the trial court's factual findings. This is a straightforward case of statutory construction, and on that basis alone, appellant cannot prevail.

## DISPOSITION

The judgment is affirmed.

                                                    RAYE          , P. J.

We concur:

          ROBIE          , J.

          HOCH          , J.

8